# EXHIBIT "A"

## LOAN AGREEMENT

**THIS LOAN AGREEMENT** is made this 19th day of September, 2017, by and between **EXCEL FINANCIAL CORP.** ("Lender") and **ASHRAFUL ISLAM and DILRUBA ISLAM** (the "Borrower").

1. **DEFINITIONS.** The terms set forth below shall be defined as follows.

    1.1 "Anti-Money Laundering Laws" means those laws, regulations and sanctions, state and federal, criminal and civil, that (a) limit the use of and/or seek the forfeiture of proceeds from illegal transactions; (b) limit commercial transactions with designated countries or individuals believed to be terrorists, narcotics dealers or otherwise engaged in activities contrary to the interests of the United States; (c) require identification and documentation of the parties with whom a Financial Institution conducts business; or (d) are designed to disrupt the flow of funds to terrorist organizations. Such laws, regulations and sanctions shall be deemed to include the Patriot Act, the Bank Secrecy Act, the Trading with the Enemy Act, 50 U.S.C. App. Section 1, *et seq.*, the International Emergency Economic Powers Act, 50 U.S.C. Section 1701, *et seq.*, and the sanction regulations promulgated pursuant thereto by the OFAC, as well as laws relating to prevention and detection of money laundering in 18 U.S.C. Sections 1956 and 1957.

    1.2 "Bank Secrecy Act" means the Bank Secrecy Act, 31 U.S.C. Sections 5311, *et seq.*

    1.3 "Borrower" means **ASHRAFUL ISLAM and DILRUBA ISLAM,** adult individuals.

    1.4 "Borrower's Address" is: 1611 Clearview Road, Lansdale, PA 19446.

    1.5 "Collateral" means all property, assets or rights that secure the payment of the Obligations, whether now owned or existing or hereafter created or acquired and the cash and noncash proceeds thereof.

    1.6 "Date of Agreement" is the date first written above.

    1.7 "Event of Default" means each and every event specified as such in Section 6 of this Agreement or in any Loan Document.

    1.8 "Financial Institution" means a United States Financial Institution as defined in 31 U.S.C. 5312, as periodically amended.

    1.9 "Lender's Address" is: 455 Pennsylvania Avenue, Suite 2LF, Fort Washington, PA 19034.

    1.10 "Loan Document(s)" means any Loan Agreement, Note, Mortgage or any other document heretofore, now or hereafter executed by Borrower to Lender, together with all modifications, extensions and/or renewals thereof.

1.11    "Maturity Date" is the three year anniversary of the Date of Agreement, unless such date is extended on one or more occasions, then the last date of the last such extension.

1.12    "Mortgaged Property" means 407-409 W. Main Street, Lansdale, PA 19446.

1.13    "Obligations" means all indebtedness, obligations and liabilities of Borrower to Lender of every kind and description, direct or indirect, secured or unsecured, joint or several, absolute or contingent, due or to become due, including, but not limited to, any overdrafts, whether for payment or performance, now existing or hereafter arising, whether presently contemplated or not, regardless of how the same arise or by what instrument, agreement or book account they may be evidenced, or whether evidenced by any instrument, agreement or book account, including, but not limited to, all loans (including any loan by modification, renewal or extension), all indebtedness, all undertakings to take or refrain from taking any action, all indebtedness, liabilities or obligations owing from Borrower to others which Lender may have obtained by purchase, negotiation, discount, assignment or otherwise; and all interest, taxes, fees, charges, expenses and attorney's fees (whether or not such attorney is a regularly salaried employee of Lender) chargeable to Borrower or incurred by Lender under this Agreement, or any other document or instrument delivered in connection herewith, therewith or in connection with any other loan between Lender and Borrower, whether now existing or entered into at a later date.

1.14    "OFAC" means the Office of Foreign Assets Control, Department of the Treasury.

1.15    "Patriot Act" means the USA PATRIOT Act of 2001, Pub. L. No. 107-56.

1.16    "Person" means any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

1.17    "Security Interest" means any transaction which creates or provides for a lien or security interest by agreement.

1.18    "Specially Designated National and Blocked Persons" means those Persons that have been designated by executive order or by the sanction regulations of OFAC as Persons with whom U.S. Persons may not transact business or must limit their interactions to types approved by OFAC.

1.19    "U.S. Person" means any United States citizen, any entity organized under the laws of the United States or its constituent states or territories, or any entity, regardless of where organized, having its principal place of business within the United States or any of its territories.

To the extent not defined in Section 1, (or in any other Loan Documents), unless the context otherwise requires, all other terms contained in this Agreement shall have the meanings attributed to them by the Uniform Commercial Code in force in the Commonwealth of Pennsylvania ("UCC"), as of the Date of Agreement, to the extent that same are used or defined therein.

To the extent not defined in Section 1, unless the context otherwise requires, all accounting terms in this Agreement shall be construed in accordance with Generally Accepted Accounting Principles as of the Date of Agreement, to the extent that same are used or defined herein.

## 2.    COMMITMENTS.

2.1    Subject to the terms and conditions of this Loan Agreement and the Loan Documents, Lender agrees to lend to Borrower, and Borrower agrees to borrow from Lender, the amount of One Hundred Sixty Thousand Dollars on or about the Date of Agreement.

2.2    At the Closing of the Loan, Lender shall place a sum of One Thousand Nine Hundred Fifty ($1,950.00) Dollars of the Loan proceeds into a non-interest bearing comingled FDIC insured "Interest Reserve" which will fund monthly interest payments due under the Loan Documents. At such time as the "Interest Reserve" is depleted, the Borrower shall be responsible for timely submitting all payments due under the Loan Documents. The funds held in the "Interest Reserve" constitute Collateral hereunder and may be applied in Lender's sole discretion. Nothing contained herein shall release Borrower from Borrower's obligation to make all payments, when due, under the Loan Documents.

2.3    At the Closing of the Loan, Lender shall place a sum of the Loan proceeds which when added to the monthly payment required under the Mortgage for monthly tax escrow payments, will create sufficient funds for Lender to pay the real estate tax bills on or before the discount date. The payments described under this paragraph shall be placed into a non-interest bearing comingled FDIC insured "Tax Reserve" which will fund the payment of the real estate tax bills. At any time that the "Tax Reserve" is insufficient to pay the real estate tax bills when due, Borrower shall deliver, upon demand, such funds which Lender requires to restore the Tax Reserve. The Borrower shall be responsible for timely submitting all tax bills to Lender.. The funds held in the "Tax Reserve" constitute Collateral hereunder and may be applied in Lender's sole discretion.

## 3.    REPRESENTATIONS AND WARRANTIES.

3.1    Borrower represents and warrants to Lender, and such representations and warranties shall be continuing, so long as any Obligations shall remain outstanding, as follows:

3.1.1    Borrower: (i) has all necessary licenses and permits to carry on and operate all of its properties; and (ii) has the power and authority to own the

Collateral, to enter into and perform the Loan Documents and to incur the Obligations. Borrowers are adult individuals, *sui juris*.

3.1.2   Borrowers have not changed their name, or acquired any business

3.1.3   This Agreement and any Loan Documents constitute valid and legally binding Obligations of Borrower and are enforceable against Borrower in accordance with their respective terms.

3.1.4   Borrower has filed all Federal, state and local tax returns and other reports Borrower is required to file and has paid or made adequate provision for payment of all such taxes, assessments and other governmental charges.

3.1.5   All property owned or utilized by Borrower is in compliance and will continue to be in compliance with all requirements of all current and future federal, state, and local environmental laws, statutes, regulations and ordinances, including, but not limited to, Pennsylvania "common law"; the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §9601, *et seq.*, as amended ("CERCLA"), the Resource Conservation and Recovery Act, 42 U.S.C. §6901, *et seq.*, as amended ("RCRA"), the Toxic Substances Control Act, 15 U.S.C. §2601, *et seq.*, as amended ("TSCA"), the Clean Air Act, 42 U.S.C. §7401, *et seq.*, as amended, and all applicable Pennsylvania laws (all such Federal, state, county, municipal or other laws, ordinances or regulations are hereinafter collectively referred to as the "Environmental Laws").

3.1.6   The execution and performance of this Agreement and any Loan Document will not violate or result in a default or in the creation or imposition of any lien or encumbrance upon any of the assets of Borrower (immediately, with the passage of time, or with the giving of notice and the passage of time) under any other contract, agreement, or instrument to which Borrower is a party or by which Borrower is bound, nor will it result in the acceleration of any obligation under any mortgage, lien, lease, franchise, license, permit, agreement, instrument, order, arbitration award, judgment or decree, or in the termination of any license, franchise, lease, or permit, to which Borrower is a party or by which it is bound; and it will not violate or conflict with any other restriction of any kind or character to which Borrower is subject.

3.1.7   Borrower incurs the Obligations herein from Lender for business purposes only and shall not incur the Obligations for personal, household or family purposes.

3.1.8   There is no claim, loss, contingency, litigation or proceeding whether or not pending, threatened, or imminent against or otherwise affecting Borrower that involves the possibility of any judgment or liability not fully covered by insurance or that may result in a material adverse change

in the business, properties, prospects, operation or condition (financial or otherwise) of Borrower.

3.1.9    Borrower has complied with all applicable statutes, regulations, ordinances, court decrees, or other directives of the United States of America and all states, counties, municipalities, and agencies with respect to the manufacture and sale of Borrower's goods, the rendition of Borrower's services and/or the conduct of Borrower's business.

3.1.10   Borrower has heretofore delivered to Lender current financial statements, acceptable to Lender, which were prepared by independent certified public accountants. The financial statements were true, correct and complete and were prepared in accordance with Generally Accepted Accounting Principles, consistently applied and present fairly the financial position and results of operations of Borrower as of the date of and for the period involved. The financial statements make full and adequate provision for all obligations, liabilities and commitments (fixed and contingent) of Borrower as of the date of the financial statements. Since the date of the financial statements, there has been no material adverse change in the business, prospects, operation or condition (financial or otherwise) of Borrower.

3.1.11   With respect to any Employee Benefit Plan maintained by Borrower, no Prohibited Transaction or Reportable Event (as defined in Title IV of the Employee Retirement Income Security Act of 1974, as amended) has occurred and is continuing; Borrower is not subject to a thirty (30) day notice to the Pension Benefit Guaranty Corporation, and Borrower will comply with the provisions of the Employee Retirement Income Security Act of 1974, as amended and the Internal Revenue Code of 1986, as amended.

3.1.12   Borrower is the owner of the Collateral free and clear of all Security Interests, encumbrances or liens, except liens which arise by operation of law with respect to Obligations of Borrower which are not yet due and payable; and Borrower will defend the Collateral against all claims and demands of all persons at any time claiming an interest therein.

**4.    GENERAL COVENANTS.**

4.1    Borrower covenants and agrees that so long as any obligations shall remain outstanding:

4.1.1    Borrower shall not permit any further mortgage, pledge, Security Interest in or lien or encumbrance upon any of the property, assets or rights of Borrower.

4.1.2    Borrower shall not merge or consolidate with or sell, assign, or otherwise transfer or dispose of (whether in one transaction or in a series of

transactions) all or substantially all of its assets (whether now owned or hereafter acquired or arising) to, any person or entity, or acquire all or substantially all of the assets or the business of any person or entity.

4.1.3    Borrower shall continue to engage in an efficient and economical manner in a business of the same general type as conducted by it on the Date of Agreement.

4.1.4    Borrower shall furnish to Lender:

(a)    Signed copies of their annual federal income tax return by April 30 of each year that this Loan is outstanding; and

(b)    Promptly and in form satisfactory to Lender, such other information as Lender may reasonably request from time to time.

4.1.5    Comply with all present and future laws, rules and regulations (federal, state and local) applicable to Borrower in the operation of Borrower's business and the ownership of Borrower's assets, and all material agreements to which Borrower is subject.

4.2    Borrower further covenants and agrees to:

4.2.1    Promptly notify Lender of any condition or event which constitutes, or would constitute with the passage of time or giving of notice or both, an Event of Default under this Agreement or any Loan Document and promptly inform Lender of any events or change in the financial condition of Borrower occurring since the date of the last financial statement of Borrower delivered to Lender, which individually or cumulatively, when viewed in light of prior financial statements, could result in a material adverse change in the business, properties, prospects, operation or condition (financial or otherwise) of Borrower;

4.2.2    Intentionally omitted

4.2.3    Pay or deposit promptly when due all sales, use, excise, personal property, income, withholding, corporate, franchise and other taxes, assessments and governmental charges and, when requested by Lender, submit to Lender proof satisfactory to Lender that such payments and/or deposits have been made;

4.2.4    Maintain casualty insurance coverage (naming Lender as an additional insured, loss payee and/or mortgagee as applicable) with an insurance company on the Collateral in such amounts and of such types as may be requested by Lender, and in any event, as are ordinarily carried by similar businesses; and, in the case of all policies insuring property in which Lender shall have a Security Interest of any kind whatsoever, all such insurance policies shall provide that the proceeds thereof shall be payable

to Borrower and Lender, as their respective interests may appear. Borrower shall produce proof of payment of premiums for said insurance policies as Lender may reasonably request. All said policies or certificates thereof, including all endorsements thereof and those required hereunder, shall be deposited with Lender; and such policies shall contain provisions that no such insurance may be canceled or decreased or amended without Lender's approval. If Borrower shall at any time or times hereafter fail to obtain and/or maintain any of the policies of insurance required herein, or fail to pay any premium in whole or in part relating to any such policies, Lender shall be notified within thirty (30) days of any such failure to obtain and/or maintain said policies of insurance or the failure to pay any premium when due, the Lender may, but shall not be obliged to, obtain and/or cause to be maintained insurance coverage with respect to the Collateral, including, at Lender's option, the coverage provided by all or any of the policies of Borrower and pay all or any part of the premium therefore, without waiving any Event of Default by Borrower, and any sums, including reasonable attorney fees, court costs, expenses and other charges related thereto, so disbursed by Lender shall be payable, on demand, by Borrower to Lender and shall be an additional Obligation;

4.2.5   Notify Lender in writing within ten (10) days, of any claim, litigation, action or proceeding filed or commenced by or against Borrower that could result in a material adverse change in the business, properties, prospects, operation or condition (financial or otherwise) of Borrower;

4.2.6   Permit Lender, at Borrower's expense, through Lender's authorized attorneys, accountants or representatives, to inspect the Collateral and inspect, examine and audit the books, accounts, records, ledgers and assets of every kind and description of Borrower with respect thereto at reasonable times; and

4.2.7   At any time and from time to time upon request of Lender, execute and deliver to Lender, in form and substance satisfactory to Lender, such documents as Lender shall deem necessary or desirable to perfect or maintain perfected the Security Interest of Lender in the Collateral or which may be necessary to comply with the provisions of the laws of the Commonwealth of Pennsylvania or the laws of any other jurisdiction in which Borrower may then be conducting business or in which any of the Collateral may be located.

## 5.   FINANCIAL COVENANTS.

5.1   Borrower covenants and agrees that so long as any Obligations shall remain outstanding, Borrower shall not incur any indebtedness from any source other than Lender, except normal trade debts and accruals in the ordinary course of business.

**6.    EVENTS OF DEFAULT AND ACCELERATION.**

6.1    The occurrence of any one or more of the following events shall constitute an Event of Default hereunder:

6.1.1    Failure to pay any principal, interest or any of the Obligations as and when due;

6.1.2    Failure to perform or observe any covenant, term or agreement herein set forth or set forth in any Loan Document, other than a default due to non-payment, as set forth in subparagraph 6.1.1 above, within ten (10) days after written notice from Lender of such non-compliance (unless the same cannot reasonably be cured within such ten (10) day period but the Borrower undertakes within such ten (10) day period and thereafter diligently pursues the curing of such non-compliance, then the period within which the Borrower shall cure such non-compliance shall be extended to thirty (30) days after the original written notice from the Lender of such non-compliance);

6.1.3    Any representation or warranty made or deemed made by the Borrower herein or in any Loan Document or which is contained in any certificate, document, opinion or other statement furnished now or at any time shall prove to be incorrect in any material respect on or as of the date made or deemed to be made;

6.1.4    Failure to pay or perform any Obligation of any Borrower to Lender, whether by maturity or acceleration, set forth herein or in any Loan Document;

6.1.5    Death of any Borrower;

6.1.6    A proceeding being filed or commenced against Borrower for dissolution or liquidation; or any Borrower voluntarily or involuntarily terminating or dissolving or being terminated or dissolved; insolvency of Borrower, or Borrower fails to pay its debts as they become due in the ordinary course of business; or a creditor's committee is appointed for the business of the Borrower, or Borrower makes an assignment for the benefit of creditors, or a petition in bankruptcy or for reorganization or to effect a plan of arrangement with creditors if filed by the Borrower; or Borrower applies for or permits the appointment of a receiver or trustee for any or all of its property, assets or rights, or any such receiver or trustee shall have been appointed for any or all of its property, assets or rights; or any of the above actions or proceedings whatsoever are commenced by or against any other party liable for the Obligations;

6.1.7    Any attachments, liens or additional Security Interests being placed upon any of the Collateral;

6.1.8   Acquisition at any time or from time to time of title to the whole or any part of the Collateral by any person, partnership or corporation other than Borrower;

6.1.9   Any final judgment, order or decree rendered against Borrower exceeding $25,000 and remaining undischarged, unstayed or outstanding against Borrower for a period of thirty (30) days;

6.1.10   Any investigation undertaken by any governmental entity or if any indictment, charge or proceeding is filed or commenced, whether criminal or civil, pursuant to Federal or state law against Borrower for which forfeiture of any of the property or assets of Borrower is a penalty;

6.1.11   Any Reportable Event occurs or if any Employee Benefit Plan is terminated or Lender reasonably believes that such plan may be terminated pursuant to and as defined in the Employee Retirement Income Security Act of 1974, as amended; or

6.1.12   Lender reasonably deems itself insecure; the occurrence of a material adverse change in the business, properties, prospects, operation or condition (financial or otherwise) of Borrower; or a material adverse occurrence.

6.2     If any Event of Default shall occur, then or at any time thereafter, while such Event of Default shall continue, Lender may declare all Obligations to be due and payable, without notice, protest, presentment, dishonor or demand, all of which are hereby expressly waived by Borrower.

## 7.     RIGHTS AND REMEDIES.

Lender shall have the following rights and remedies at any time following the occurrence of an Event of Default:

7.1     Lender, and any officer or agent of Lender, is hereby constituted and appointed as true and lawful attorney-in-fact of Borrower with power:

7.1.1   To endorse the name of Borrower upon any instrument of payment (including payments made under any policy of insurance) that may come into possession of Lender in full or in part payment of any Obligation;

7.1.2   To sign and endorse the name of Borrower upon any invoice, freight or express bill, bill of lading, storage or warehouse receipt, drafts against account debtors or other obligors;

7.1.3   To notify the post office authorities to change the address for delivery mail of Borrower to an address designated by Lender and to receive, open and dispose of all mail addressed to Borrower;

7.1.4    To sign the name of Borrower upon any Local, State or Federal agency information release form including, but not limited to, Tax Information Authorization Form 8821 of the Internal Revenue Service.

7.1.5    To sell, assign, sue for, collect or compromise payment of all or any part of the Collateral in the name of Borrower, or in its own name, or make any other disposition of Collateral, or any part thereof, which disposition may be for cash, credit or any combination thereof, and Lender may purchase all or any part of the Collateral at public or, if permitted by law, private sale, and in lieu of actual payment of such purchase price, may setoff the amount of such price against the Obligations;

7.1.6    Granting to Lender, as the attorney-in-fact of Borrower, full power of substitution and full power to do any and all things necessary to exercise its rights and remedies as fully and effectually as Borrower might or could do but for this appointment, and hereby ratifying all that said attorney-in-fact shall lawfully do or cause to be done by virtue hereof. Neither Lender nor its agents shall be liable for any acts or omissions or for any error of judgment or mistake of fact or law in its capacity as such attorney-in-fact. This power of attorney is coupled with an interest and shall be irrevocable so long as any Obligations shall remain outstanding; and

7.1.7    To appraise or reappraise any property, assets or rights of Borrower, at Borrower's expense, in any Federally regulated transaction as defined under Title XI of the Financial Institution, Reform, Recovery and Enforcement Act of 1989 and such expense (whether or not such appraiser is a salaried employee of Lender) shall be part of the Obligations payable on demand.

Borrower acknowledges and agrees that (a) any powers granted to Lender hereunder are granted in connection with a commercial transaction, (b) Lender's exercise of any such powers would be in accordance with Borrower's reasonable expectations, and (c) Lender does not and shall not have any of the duties to Borrower set forth in 20 Pa.C.S.A. §5601.3(b), and the same are hereby irrevocably waived by Borrower.

7.2    Lender shall have, in addition to any other rights and remedies contained herein, and any Loan Document, all of the rights and remedies of a secured party under the Uniform Commercial Code in force in the Commonwealth of Pennsylvania, as of the Date of Agreement, and all rights and remedies available at law or in equity, all of which rights and remedies shall be cumulative, and nonexclusive, to the extent permitted by law.

7.3    Any notice required to be given by Lender of a sale or other disposition of the Collateral or other intended action by Lender made in accordance with the terms herein or any Loan Document at least ten (10) days prior to such proposed action, shall constitute fair and reasonable notice to Borrower of any such action. In the

event that any of the Collateral is used in conjunction with any real estate, the sale of the Collateral in conjunction with and as one parcel with any such real estate of Borrower, shall be deemed to be a commercially reasonable manner of sale. The net proceeds realized by Lender upon any such sale or other disposition, after deduction of the expenses of retaking, holding, preparing for sale, selling or the like and reasonable attorneys' fees and any other expenses incurred by Lender, shall be applied toward satisfaction of the Obligations hereunder. Lender shall account to Borrower for any surplus realized upon such sale or other disposition and Borrower shall remain liable for any deficiency. The commencement of any action, legal or equitable, shall not affect the Security Interest of Lender in the Collateral until the Obligations hereunder or any judgment therefor are fully paid.

7.4     If at any time Lender determines that any applicable law, regulation, condition or directive, or the interpretation of any thereof, relating to capital adequacy (including, but not limited to, any request, guideline or policy, whether or not having the force of law, and including, but not limited to, any regulation promulgated by the Board of Governors of the Federal Reserve System as now or from time to time hereafter in effect) by any authority charged with the administration or interpretation thereof, or any change in any of the foregoing, has or would have the effect of reducing the rate of return on Lender's capital as a consequence of Lender's obligations under this Agreement to a level below that which Lender would have achieved but for such law, regulation, condition, directive, interpretation or change (taking into consideration Lender's policies with respect to capital adequacy) by an amount deemed by Lender to be material, then from time to time Borrower shall pay to Lender on demand such additional amount(s) as will compensate Lender for such reduction.

7.4.1     Lender will promptly notify Borrower of any event of which it has knowledge occurring after the date hereof, which will entitle Lender to compensation pursuant to Section 7.4. A certificate or notice from Lender claiming right of compensation under Section 7.4 and setting forth the additional amount(s) to be paid to it hereunder shall be conclusive in the absence of manifest error. In determining such amount, Lender may use any reasonable averaging and attribution methods.

7.4.2     Borrower's failure to pay such additional amount(s) shall result in Borrower becoming liable for the difference between the actual return achieved and what Lender had expected to achieve and shall become a part of Borrower's Obligations herein secured by the Collateral.

## 8.     GENERAL PROVISIONS.

8.1     The failure of Lender at any time or times hereafter to require strict performance by Borrower of any of the provisions, warranties, terms and conditions contained herein or in any Loan Document shall not waive, affect or diminish any right of Lender at any time or times thereafter to demand strict performance thereof; and, no rights of Lender hereunder or in any Loan Document shall be deemed to have

been waived by any act or knowledge of Lender, its agents, officers or employees, unless such waiver is contained in an instrument in writing signed by an officer of Lender and directed to Borrower specifying such waiver. No waiver by Lender of any of its rights shall operate as a waiver of any other of its rights or any of its rights on a future occasion.

8.2   Any demand or notice required or permitted to be given hereunder or in any Loan Document shall be deemed effective when deposited in the United States mail, and sent by certified mail, return receipt requested, postage prepaid, addressed as follows, or to such other address as may be provided by the party to be notified, on ten (10) days prior written notice to the other party:

| | |
|---|---|
| If to Borrower: | Ashraful M. Islam and Dilruba A. Islam<br>1611 Clearview Road<br>Lansdale, PA 19446 |
| Copy to: | **Waived** |
| If to Lender: | Excel Financial Corp.<br>455 Pennsylvania Avenue, Suite 2LF<br>Fort Washington, PA 19034<br>Attn:   Richard Frankel, President |
| Copy to: | Friedman, Schuman, Applebaum<br>  & Nemeroff, P.C.<br>101 Greenwood Avenue, Fifth Floor<br>Jenkintown, PA  19046<br>Attn:   Kerry S. Schuman, Esquire |

8.3   Any notice required to be given by Lender made in accordance with the terms herein or any Loan Document, shall constitute fair and reasonable notice to Borrower of any such action.

8.4   This Agreement and the Loan Documents contain the entire understanding between the parties hereto with respect to the transactions contemplated herein and such understanding shall not be modified except in writing signed by or on behalf of the parties hereto.

8.5   Borrower shall not hold Lender liable due to any action or failure to act by Lender herein or under any Loan Document except as a result of Lender's gross negligence or willful misconduct. This provision shall survive the termination or expiration of this Agreement or any Loan Document.

8.6     Wherever possible, each provision herein or in any Loan Document shall be interpreted in such manner as to be effective and valid under applicable law; should any portion of this Agreement or any Loan Document be declared invalid for any reason in any jurisdiction, such declaration shall have no effect upon the remaining portions of this Agreement or any Loan Document, furthermore, the entirety of this Agreement or any Loan Document shall continue in full force and effect in all other jurisdictions and said remaining portions herein or in any Loan Document shall continue in full force and effect in the subject jurisdiction as if this Agreement or any Loan Document had been executed with the invalid portions thereof deleted.

8.7     In the event Lender seeks to take possession of any or all of the Collateral by court process, Borrower hereby irrevocably waives any bonds and any surety or security relating thereto required by any statute, court rule or otherwise as an incident to such possession and waives any demand for possession prior to the commencement of any suit or action to recover.

8.8     The provisions of this Agreement or any Loan Document shall be binding upon and shall inure to the benefit of the heirs, personal representatives, administrators, successors and assigns of Lender and Borrower; provided, however, Borrower may not assign any of its rights or delegate any of its Obligations hereunder or in any Loan Document without the prior written consent of Lender.

8.9     This Agreement or any Loan Document is and shall be deemed to be a contract entered into and made pursuant to the laws of the Commonwealth of Pennsylvania and shall, in all respects, be governed, construed, applied and enforced in accordance with such laws.

8.10    If, prior hereto and/or at any time or times hereafter, Lender shall employ counsel in connection with the execution and consummation of the transactions contemplated herein or in any Loan Document or to commence, defend or intervene, file a petition, complaint, answer, motion or other pleadings, or to take any other action in or with respect to any suit or proceeding (bankruptcy or otherwise) relating to this Agreement or any Loan Document, or to enforce any rights of Lender hereunder, or in any Loan Document, whether before or after the occurrence of any Event of Default, or to collect any of the Obligations then, in any of such events, Borrower agrees to pay reasonable attorneys' fees (whether or not such attorney is a regularly salaried employee of Lender), and any expenses, costs and charges relating thereto, and such shall be part of the obligations payable on demand and secured by the Collateral.

8.11    With respect to all or any part of the Obligations, in the event that the Lender seeks to enter into a participation, inter-creditor and/or assignment agreement, then Borrower hereby authorizes Lender to release all or part of any financial or credit information provided by Borrower to Lender to any other bank or financial institution without notice.

8.12   Each reference herein or in any Loan Document to Lender shall be deemed to include its successors and assigns, and each reference to Borrower and any pronouns referring thereto as used herein shall be construed in the masculine, feminine, neuter, singular or plural as the context may require, and shall be deemed to include heirs, personal representatives, administrators, successors and assigns of Borrower, all of whom shall be bound by the provisions hereof or in any Loan Document.   The term "Borrower" as used herein shall, if this Agreement or any Loan Document is signed by more than one Borrower, mean, unless this Agreement or any Loan Document otherwise provides or unless the context otherwise requires, the "Borrower" and each of them and each and every representation, promise, agreement and undertaking shall be joint and several, except that the granting of the Security Interest, right of setoff and lien shall be by each Borrower in its several respective properties.

8.13   The section headings herein are included for convenience only and shall not be deemed to be a part of this Agreement or any Loan Document.

8.14   This Agreement and the Loan Documents are intended to take effect as instruments under seal.

## 9.    ASSIGNMENT BY LENDER.

Lender may, from time to time, without notice to the Borrower, sell, assign, transfer or otherwise dispose of all or any part of the Obligations and/or the Collateral therefore.  In such event, each and every immediate and successive purchaser, assignee, transferee or holder of all or any part of the Obligations and/or the Collateral shall have the right to enforce this Agreement, by legal action or otherwise, for its own benefit as fully as if such purchaser, assignee, transferee or holder were herein by name specifically given such rights.  Lender shall have an unimpaired right to enforce this Agreement for its benefit to that portion of the Obligations as Lender has not sold, assigned, transferred or otherwise disposed of.

## 10.    WAIVER OF JURY TRIAL.

**BORROWER WAIVES TRIAL BY JURY AND CONSENTS TO AND CONFERS PERSONAL JURISDICTION ON COURTS OF THE COMMONWEALTH OF PENNSYLVANIA OR OF THE FEDERAL GOVERNMENT LOCATED IN THE COMMONWEALTH OF PENNSYLVANIA, AND EXPRESSLY WAIVES ANY OBJECTIONS AS TO VENUE IN ANY OF SUCH COURTS, AND AGREES THAT SERVICE OF PROCESS MAY BE MADE ON BORROWER BY MAILING A COPY OF THE SUMMONS TO BORROWER AT BORROWER'S ADDRESS, LENDER LIKEWISE WAIVES TRIAL BY JURY.**

## 11.    WARRANT OF ATTORNEY FOR CONFESSION OF JUDGMENT.

**BORROWER HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OF RECORD, OR THE PROTHONOTARY OR CLERK OF ANY COURT IN THE COMMONWEALTH OF PENNSYLVANIA OR ELSEWHERE, TO APPEAR FOR BORROWER AT ANY TIME OR TIMES, AFTER THE OCCURRENCE**

OF AN EVENT OF DEFAULT AND EXPIRATION OF ANY APPLICABLE CURE PERIODS WITH RESPECT THERETO UNDER ANY OF THE LOAN DOCUMENTS, IN ANY SUCH COURT IN ANY ACTION BROUGHT AGAINST BORROWER BY LENDER WITH RESPECT TO THE AGGREGATE AMOUNTS PAYABLE UNDER THE LOAN DOCUMENTS, WITH OR WITHOUT DECLARATION FILED, AS OF ANY TERM, AND THEREIN TO CONFESS OR ENTER JUDGMENT AGAINST BORROWER FOR ALL SUMS PAYABLE BY BORROWER TO LENDER UNDER THE LOAN DOCUMENTS, AS EVIDENCED BY AN AFFIDAVIT SIGNED BY A DULY AUTHORIZED DESIGNEE OF LENDER SETTING FORTH SUCH AMOUNT THEN DUE FROM BORROWER TO LENDER, WITH COSTS OF SUIT, PLUS ATTORNEY'S COMMISSION EQUAL TO FIFTEEN (15%) PERCENT OF THE AGGREGATE OF SUCH SUMS, AND BORROWER ACKNOWLEDGES THAT ATTORNEYS' FEES ARE STATED TO BE FIFTEEN (15%) PERCENT SOLELY FOR PURPOSES OF FIXING A SUM CERTAIN FOR WHICH JUDGMENT CAN BE ENTERED BY CONFESSION AND AGREES THAT IN ENFORCING ANY SUCH JUDGMENT, LENDER SHALL NOT DEMAND, SOLELY WITH RESPECT TO ATTORNEY'S FEES INCURRED BY LENDER IN CONNECTION WITH SUCH INDEBTEDNESS AFTER SUCH JUDGMENT IS RENDERED, ANY AMOUNTS IN EXCESS OF THE ACTUAL AMOUNT OF REASONABLE ATTORNEYS' FEES CHARGED OR BILLED TO LENDER (WHICH ATTORNEYS' FEES SHALL BE CHARGED OR BILLED TO THE LENDER AT THE STANDARD HOURLY RATES),   WITH RELEASE OF PROCEDURAL ERRORS AND WITHOUT RIGHT OF APPEAL.  IF A COPY OF THIS LOAN AGREEMENT, VERIFIED BY AN AFFIDAVIT SHALL HAVE BEEN FILED IN SUCH ACTION, IT SHALL NOT BE NECESSARY TO FILE THE ORIGINAL AS A WARRANT OF ATTORNEY.  BORROWER WAIVES THE RIGHT TO ANY STAY OF EXECUTION AND THE BENEFIT OF ALL EXEMPTION LAWS NOW OR HEREAFTER IN EFFECT.   NO SINGLE EXERCISE OF THE FOREGOING WARRANT AND POWER TO BRING ANY ACTION OR CONFESS JUDGMENT THEREIN SHALL BE DEEMED TO EXHAUST THE POWER, BUT THE POWER SHALL CONTINUE UNDIMINISHED AND MAY BE EXERCISED FROM TIME TO TIME AS OFTEN AS LENDER SHALL ELECT UNTIL ALL AMOUNTS PAYABLE TO LENDER UNDER THE LOAN DOCUMENTS SHALL HAVE BEEN PAID IN FULL.

BORROWER ACKNOWLEDGES AND AGREES THAT (A) THE FOREGOING WARRANT OF ATTORNEY TO CONFESS JUDGMENT IS BEING EXECUTED IN CONNECTION WITH A COMMERCIAL TRANSACTION, (B) LENDER'S CONFESSION OF JUDGMENT FOLLOWING AN EVENT OF DEFAULT AND IN ACCORDANCE WITH THE FOREGOING WARRANT OF ATTORNEY WOULD BE IN ACCORDANCE WITH BORROWER'S REASONABLE EXPECTATIONS, AND (C) LENDER DOES NOT AND, IN REGARDS TO THE LOAN OR THE LOAN DOCUMENTS, SHALL NOT HAVE ANY OF THE DUTIES TO BORROWER SET FORTH IN 20 PA.C.S.A. §5601.3(B), AND THE SAME ARE HEREBY IRREVOCABLY WAIVED BY BORROWER.

12.    **DAMAGES.**

BORROWER AGREES THAT IN ANY ACTION, SUIT OR PROCEEDING, AND IN RESPECT OF OR ARISING OUT OF ANY LOAN DOCUMENT, BORROWER WAIVES TO THE FULLEST EXTENT PERMITTED BY LAW, ANY CLAIM FOR CONSEQUENTIAL, PUNITIVE OR SPECIAL DAMAGES.

13.    **WAIVER OF AUTOMATIC STAY.**

IN THE EVENT THAT A PROCEEDING UNDER ANY BANKRUPTCY OR INSOLVENCY LAW IS COMMENCED BY OR AGAINST BORROWER AND AN ORDER FOR RELIEF IS ENTERED AS A RESULT OF SUCH PETITION, BORROWER HEREBY CONSENTS TO RELIEF FROM THE AUTOMATIC STAY IMPOSED BY 11 U.S.C. §362 TO ALLOW LENDER TO EXERCISE ITS RIGHTS AND REMEDIES HEREUNDER WITH RESPECT TO THE COLLATERAL.

14.    **REPRESENTATION BY COUNSEL.**

BORROWER ACKNOWLEDGES THAT BORROWER HAS BEEN ADVISED OF ITS RIGHT TO BE REPRESENTED BY COUNSEL OF BORROWER'S OWN CHOICE AND KNOWINGLY AND VOLUNTARILY GRANTED TO LENDER THE RIGHTS SET FORTH HEREIN, INCLUDING, BUT NOT LIMITED TO, THE RIGHTS SET FORTH IN PARAGRAPHS 10, 11, 12 AND 13 HEREOF.

15.    **ANTI-MONEY LAUNDERING AND INTERNATIONAL TRADE CONTROLS.**

15.1    Borrower represents, warrants and covenants to Lender that:

15.1.1    it is not now nor shall it be at any time until after the Loan is fully repaid a Person with whom a U.S. Person, including a Financial Institution, is prohibited from transacting business of the type contemplated by this Agreement, whether such prohibition arises under U.S. law, regulation, executive orders and lists published by the OFAC (including those executive orders and lists published by OFAC with respect to Specially Designated Nationals and Blocked Persons) or otherwise.

15.1.2    No Borrower and no Person who owns a direct interest in Borrower is now nor shall be at any time until after the Loan is fully repaid a Person with whom a U.S. Person, including a Financial Institution, is prohibited from transacting business of the type contemplated by this Agreement, whether such prohibition arises under U.S. law, regulation, executive orders and lists published by the OFAC (including those executive orders and lists published by OFAC with respect to Specially Designated Nationals and Blocked Persons) or otherwise.

15.2    Borrower represents, warrants and covenants to Lender that it has taken, and shall continue to take until after the Loan is fully repaid, such measures as are required by law to assure that the funds invested in Borrower and/or used to make

payments on the Loan are derived (a) from transactions that do not violate U.S. law nor, to the extent such funds originate outside the United States, do not violate the laws of the jurisdiction in which they originated; and (b) from permissible sources under U.S. law and to the extent such funds originate outside the United States, under the laws of the jurisdiction in which they originated.

15.3    Borrower further represents, warrants and covenants to Lender that, to the best of its knowledge after making due inquiry, neither Borrower, nor any holder of a direct interest in Borrower, nor any Person providing funds to Borrower (a) is under investigation by any governmental authority for, or has been charged with, or convicted of, money laundering, drug trafficking, terrorist-related activities, any crimes which in the United States would be predicate crimes to money laundering, or any violation of any Anti-Money Laundering Laws; (b) has been assessed civil or criminal penalties under any Anti-Money Laundering Laws; and (c) has had any of its funds seized or forfeited in any action under any Anti-Money Laundering Laws.

15.4    Borrower represents and warrants that it is in compliance with any and all applicable provisions of the Patriot Act.

15.5    After the Closing Date, Borrower agrees to cooperate with Lender, and to cause any third parties to cooperate with Lender, in providing such additional information and documentation on Borrower's legal or beneficial ownership, policies, procedures and sources of funds as Lender deems necessary or prudent to enable Lender to comply with Anti-Money Laundering Laws as now in existence or hereafter amended. From time to time upon the written request of Lender, Borrower shall deliver to Lender a schedule of the name, legal domicile address and jurisdiction of organization, if applicable, for each Borrower Party and each holder of a legal interest in Borrower.

15.6    If (1) Borrower shall fail to comply with any of the provisions of this Section, or (2) any representation, warranty or covenant of Borrower under this Section, shall be false, misleading or incorrect as of the date made, then Lender, in addition to all of its other rights and remedies hereunder, may declare that an Event of Default exists under this Agreement. Borrower shall notify Lender promptly of any change in facts or circumstances that causes any of the representations, warranties or covenants in this Article 15 to be untrue.

15.7    Borrower further represents, warrants and covenants that all evidence of Borrower's identity provided to Lender is genuine, that all related information is accurate and that Borrower has acquired and shall hold its interest in the Collateral for its own account, risk and beneficial interest, without the obligation or intention to sell, distribute, assign or transfer all or any portion of such interest to any other Person.

15.8    If Lender reasonably believes that Borrower may have breached any of its representations, warranties or covenants set forth in this Section, Lender has the

right (and may have the obligation under applicable law), with or without notice to Borrower, to (1) notify the appropriate governmental authority (or authorities) and to take such action as such governmental authority (or authorities) may direct; (2) withhold Loan advances and segregate the assets constituting the Loan or any of Borrower's funds or assets deposited with or otherwise controlled by Lender pursuant to the Loan Documents; (3) decline any payment (or deposit such payment with an appropriate United States governmental authority or court) or decline any prepayment or consent request, and/or declare an Event of Default and immediately accelerate the Loan. Borrower agrees that it shall not assert any claim (and hereby waives any claim that it may now or hereafter have) against Lender or any of its affiliates or agents for any form of damages as a result of any of the foregoing actions, regardless of whether Lender's reasonable belief is ultimately demonstrated to be accurate, excepting, however, Lender's gross negligence or willful misconduct.

**IN WITNESS WHEREOF** and intending to be legally bound hereby, the parties hereto have caused this Agreement to be executed on the date first written above.

<strong>BORROWER:</strong>

_____          _____
Witness                                   **Ashraful Islam**
                                                                (SEAL)
_____          _____
Witness                                   **Dilruba Islam**
                                                                (SEAL)

**LENDER:**

**EXCEL FINANCIAL CORP.**

_____          By: _____
Witness                                   Richard Frankel, President

# ACKNOWLEDGMENTS

COMMONWEALTH OF PENNSYLVANIA    :
:
COUNTY OF MONTGOMERY    :

On this, the 19th day of September, 2017, before me, the undersigned officer, personally appeared **ASHRAFUL ISLAM and DILRUBA ISLAM**, known to be or satisfactorily proven to be the persons whose names are subscribed to the within instrument, and acknowledged that he/she/they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_____
Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Michael Jay Higgins, Notary Public
Horsham Twp., Montgomery County
My Commission Expires Oct. 9, 2017