# EXHIBIT "C"

 

**MTG BK 14411 PG 00494 to 00518**
INSTRUMENT # : 2017070953
RECORDED DATE: 09/21/2017 12:35:38 PM



3517758-0020V

RECORDER OF DEEDS
MONTGOMERY COUNTY
*Jeanne Sorg*

One Montgomery Plaza
Swede and Airy Streets ~ Suite 303
P.O. Box 311 ~ Norristown, PA 19404
Office: (610) 278-3289 ~ Fax: (610) 278-3869

**MONTGOMERY COUNTY ROD**

| OFFICIAL RECORDING COVER PAGE | Page 1 of 25 |
|---|---|

| | | | |
|---|---|---|---|
| Document Type: | Mortgage | Transaction #: | 3632522 - 2 Doc(s) |
| Document Date: | 09/19/2017 | Document Page Count: | 24 |
| Reference Info: | | Operator Id: | estaglia |

| RETURN TO: (Simplifile) | PAID BY: |
|---|---|
| Elkins Park Abstract Company | ELKINS PARK ABSTRACT COMPANY |
| 721 Dresher Road | |
| Horsham, PA 19044 | |
| (215) 830-1100 | |

**\* PROPERTY DATA:**

| | |
|---|---|
| Parcel ID #: | 11-00-09548-00-8 |
| Address: | 409 W MAIN ST |
| | LANSDALE PA |
| | 19446 |
| Municipality: | Lansdale Borough (100%) |
| School District: | North Penn |

**\* ASSOCIATED DOCUMENT(S):**

| FEES / TAXES: | | MTG BK 14411 PG 00494 to 00518 |
|---|---|---|
| Recording Fee:Mortgage | $95.00 | Recorded Date: 09/21/2017 12:35:38 PM |
| Additional Pages Fee | $40.00 | |
| Affordable Housing Pages | $80.00 | I hereby CERTIFY that this document is recorded in the Recorder of Deeds Office in Montgomery County, Pennsylvania. |
| **Total:** | **$215.00** | |



**Jeanne Sorg**
**Recorder of Deeds**

Rev1 2016-01-29

# PLEASE DO NOT DETACH
## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT
**NOTE:** If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION

| Prepared by: | Friedman, Schuman, P.C.<br>101 Greenwood Avenue, Fifth Floor<br>Jenkintown, PA  19046<br>(215) 635-7200 |
|---|---|
| Return to: | Friedman, Schuman, P.C.<br>101 Greenwood Avenue, Fifth Floor<br>Jenkintown, PA  19046<br>(215) 635-7200 |
| Parcel ID No.: | 11-00-09548-00-8 |

**This is an Open-End Mortgage
under 42 Pa. C.S.A. § 8143, *et seq.***

OPEN-END MORTGAGE AND SECURITY AGREEMENT
**[THIS MORTGAGE SECURES FUTURE ADVANCES]**

**THIS OPEN-END MORTGAGE AND SECURITY AGREEMENT** (hereinafter referred to as the "Mortgage"), is made this 19th day of September, 2017, by **ASHRAFUL ISLAM and DILRUBA ISLAM** , husband and wife ("Mortgagor"), with an address at 1611 Clearview Road, Lansdale, PA 19446, to **EXCEL FINANCIAL CORP.** ("Lender"), with offices at 455 Pennsylvania Avenue, Suite 2LF, Fort Washington, PA 19034.

**WITNESSETH:**

WHEREAS, THIS IS AN OPEN-END MORTGAGE UNDER 42 Pa. C.S.A. § 8143, *et seq.*, as amended; and

WHEREAS, Mortgagor has executed and delivered to Lender its Mortgage Note dated of even date herewith (the "Note") evidencing Mortgagor's indebtedness to Lender in the principal amount of One Hundred Sixty Thousand Dollars, in accordance with a certain Loan Agreement dated of even date herewith (the "Loan Agreement"), together with interest thereon (which interest may be adjusted from time to time, as more fully set forth in the Note) payable at the rate and times, in the manner, and according to the terms and conditions specified in the Note; and

WHEREAS, all of the terms, conditions and provisions of the Note and the Loan Agreement are by reference incorporated herein, as if fully set forth; and

WHEREAS, Mortgagor has duly executed and delivered this Mortgage to secure all of Mortgagor's obligations under the Note and under all of the "Loan Documents," as hereinafter defined.

NOW THEREFORE, in consideration of the aforesaid indebtedness, and to secure the payment of all sums due or to become due under the Note, under the Loan Agreement and under the terms of this Mortgage, and to secure the payment of all sums advanced by Lender to Mortgagor, as well as to secure the performance and observance of all the terms, conditions and provisions of the Note and Loan Agreement, this Mortgage and certain other agreements and instruments made and given or to be made and given by or on behalf of Mortgagor to Lender in connection with or pursuant to the terms of the Note, the Loan Agreement and this Mortgage

(collectively the "Loan Documents"), Mortgagor has granted, bargained, conveyed, sold, aliened, enfeoffed, released, confirmed and mortgaged, and by these presents does hereby grant, bargain, convey, sell, alien, enfeoff, release, confirm and mortgage unto Lender, its successors and assigns, the Premises known as and located at 407-409 W. Main Street, Lansdale, PA 19446, as more specifically described on the metes and bounds legal description, attached hereto, made a part hereof, and labeled **Exhibit "A"** (referred to herein as the "Real Estate").

TOGETHER WITH all of Mortgagor's right, title and interest in and to, now owned or hereafter acquired in:

(i)  All buildings, structures and improvements of every kind and description now or hereafter erected or placed on the Real Estate.

(ii)  All tenements, hereditaments, appurtenances and all the estates and rights of Mortgagor in and to the Real Estate or any part thereof.

(iii)  All streets, roads, passages, ways, waters, water courses, easements, and privileges of whatsoever kind or character, belonging to, and adjoining, used in connection with or in any way appertaining to the Real Estate.

(iv)  All reversions, remainders, easements, rents, issues, income and profits arising or issuing from the Real Estate and/or the buildings, structures and improvements now or hereafter erected or placed thereon, or any portion thereof, including, but not limited to, the rents, issues, income and profits arising or issuing from all insurance policies, sale agreements, licenses, options, leases and subleases now or hereafter entered into covering any part of the Real Estate and/or the buildings, structures and improvements now or hereafter erected or placed thereon, or any portion thereof, all of which insurance policies, sale agreements, licenses, options, leases, subleases, rents, issues, income and profits are hereby assigned to Lender by Mortgagor. Mortgagor will execute and deliver to Lender, on demand, such separate, specific assignments and instruments as Lender may require to implement, confirm, maintain and continue the assignment hereunder.  Mortgagor hereby appoints Lender, its designees and nominees, as Mortgagor's agents and attorneys-in-fact to collect such rents, issues and profits.

(v)  All awards, damages, payments and other compensation, and any and all claims therefor, and rights thereto, which may result from taking or injury by virtue of the exercise of the power of eminent domain, or to, or any damage, injury or destruction in any manner caused to the Real Estate and/or the buildings, structures and improvements now or hereafter erected or placed thereon, or any portion thereof, all of which awards, damages, payments, compensation, claims and rights are hereby assigned to Lender to the fullest extent that Mortgagor may do so under any law now

existing or hereinafter adopted. Mortgagor hereby appoints Lender, its designees and nominees, as Mortgagor's agents and attorneys-in-fact to collect any such awards, damages, payments and compensation.

(vi) Except for certain personal property which is a "fixed asset," as that term is defined in Chapter 55 §4300, *et seq.,* of the Pennsylvania Code, all fixtures, fittings, furnishings, furniture, trade fixtures, machinery, equipment, apparatus, building materials, appliances, goods, supplies, tools, chattels, and all articles of tangible personal property of whatever kind and nature, together with all replacements thereof, substitutions therefor and additions and accessions thereto, and all proceeds and profits thereof and therefrom, now or at anytime hereafter affixed or attached to, installed upon, included within, or used in any way in connection with the construction, use, enjoyment, operation, maintenance or occupancy of the Real Estate and the buildings, structures and improvements now or hereafter erected or placed thereon; and all agreements, contract rights, chattel paper, negotiable instruments, general intangibles, accounts, instruments, and documents (as those terms are defined in the Pennsylvania Uniform Commercial Code). Any item referred to in this paragraph (vi) shall hereinafter, for the purposes of creating a security interest therein under the Pennsylvania Uniform Commercial Code, sometimes be referred to as the "Personal Property".

The Real Estate, and all of the right, title and interest of Mortgagor therein and thereto, and all of the property rights, title and interest referred to in paragraphs (i) through (vi) above shall hereinafter sometimes be referred to collectively as the "Mortgaged Property".

TO HAVE AND TO HOLD the Mortgaged Property hereby granted and conveyed, or mentioned and intended so to be, unto Lender, its successors and assigns, for its and their own use and benefit forever.

PROVIDED, HOWEVER, that if Mortgagor pays to Lender the principal and interest to become due under the Note at the time and in the manner stipulated therein, pays all other sums payable by Mortgagor to Lender as are secured hereby, and if Mortgagor performs and complies with all the agreements, conditions, covenants and provisions contained in the Loan Agreement, the Note and this Mortgage, and if Mortgagor pays all satisfaction costs, including the recording costs for any Mortgage satisfactions and termination statements, then this Mortgage and the estate, right, title and interest of Lender in and to the Mortgaged Property shall cease and become void. Until such time, Mortgagor covenants, represents, promises, warrants and agrees to and with Lender as follows:

1.    **Mortgagor's Title.** Mortgagor warrants, covenants and represents as follows:

1.1    Mortgagor has good and marketable and unencumbered fee simple title to the Mortgaged Property;

1.2     Mortgagor is lawfully authorized to mortgage and encumber the Mortgaged Property;

1.3     Mortgagor has not created, and will not (except as otherwise contemplated pursuant to the Loan Agreement) create, or permit or suffer to be created, any liens, encumbrances or security interests in or on the Mortgaged Property, other than this Mortgage, or create, or permit or suffer to be created, any reservation of title by any party other than Lender with respect to any portion of the Mortgaged Property; and

1.4     Mortgagor will forever warrant and defend the title to the Mortgaged Property unto the Lender, its successors and assigns against all persons and all claims of every kind and nature whatsoever.

**2.     Payment and Performance by Mortgagor.**

2.1     Mortgagor shall pay to Lender all principal, interest and other sums now or hereafter due and payable to Lender under the terms of the Note (which provides for an adjustable rate of interest), the Loan Agreement, this Mortgage, and all other Loan Documents, as and when the same shall become due and payable by the terms thereof and hereof.

2.2     Mortgagor shall perform and comply with all terms, conditions, provisions, covenants and agreements on the part of Mortgagor to be observed and performed under this Mortgage, the Note, the Loan Agreement, and all other agreements and instruments given by or on behalf of Mortgagor in connection with the Note, the Loan Agreement or this Mortgage. All the terms, conditions and provisions of such other agreements and instruments are by reference incorporated herein, as if fully set forth.

2.3     Mortgagor shall timely perform all of its obligations and duties under any present or future lease, easement, license, permit, approval, covenant or agreement relating to, affecting, created for the benefit of or used in connection with the operation of all or any portion of the Mortgaged Property.

**3.     Maintenance and Repair.**  Mortgagor shall keep and maintain the Mortgaged Property and the sidewalks, curbs and drives abutting and adjacent thereto, if any, in good and tenantable order, condition and repair, and will make as and when necessary all repairs, renewals, restorations and replacements, structural and not structural, exterior and interior, ordinary and extraordinary, foreseen and unforeseen. All such repairs, renewals, restorations and replacements made by Mortgagor shall be at least equal in quality to the original portion of the Mortgaged Property being repaired, renewed or replaced. Mortgagor shall abstain from and shall not permit the commission of waste in or about the Mortgaged Property.

**4.     Removal, Demolition and Alteration.**  Mortgagor shall not undertake or permit the removal or demolition of any building at any time erected on or forming a part of the Mortgaged Property, nor shall Mortgagor, without Lender's prior written consent, which shall not be unreasonably withheld, undertake or permit any alteration in the design or structural character of any such building.

**5.     Inspection by Lender.**  Mortgagor will permit Lender and Lender's agents and representatives to enter the Mortgaged Property and all parts thereof, at reasonable times, upon

reasonable prior notice, to inspect the Mortgaged Property and to photograph the condition and state of repair of the Mortgaged Property.

## 6.    **Insurance.**

6.1    Mortgagor shall keep all buildings and improvements, now existing or hereafter erected on or forming a part of the Mortgaged Property, and all of the Personal Property, continuously insured, to the extent of the full replacement value thereof, without co-insurance, against loss or damage by fire, with extended coverage, vandalism and malicious mischief. Mortgagor shall also insure against such other hazards as Lender may require from time to time, and shall maintain in full force and effect during the term of this Mortgage, public liability and property damage insurance with contractual liability endorsement, worker's compensation, and flood insurance relating to the Mortgaged Property, including all building and improvements now or hereafter constructed upon or forming a part of the Mortgaged Property and including all Personal Property. Mortgagor shall also provide all other insurance coverages and in such amounts as shall be required under the Loan Agreement and from time to time otherwise reasonably required by Lender. All such insurance shall be in such amounts as is necessary to comply with co-insurance requirements and otherwise, as Lender shall require, and shall be with such company or companies as are satisfactory to Lender. All policies of insurance shall be in form satisfactory to Lender and shall be delivered by Mortgagor to Lender, with premiums prepaid, as additional security for the payment of the indebtedness secured by this Mortgage, shall name Lender as a co-insured or be endorsed with a standard mortgagee clause in favor of Lender, making all losses payable to Lender, shall not be subject to contribution, shall be for a term of at least one (1) year, shall contain a replacement value clause or endorsement in form and substance satisfactory to Lender, and shall provide for cancellation or modification only upon at least thirty (30) days prior written notice to Lender.

6.2    If any of the insurance referred to herein, or any part thereof, shall expire, or be canceled, or become void or voidable by reason of the breach of any condition thereof, or if Lender determines that such coverage is unsatisfactory due to the failure or impairment of the capital of any company in which the insurance may then be carried, or if for any reason whatever the insurance shall be or become unsatisfactory to Lender, Mortgagor shall place new insurance on the Mortgaged Property, satisfactory to Lender.

6.3    If Lender acquires title to the Mortgaged Property, either by virtue of a judicial sale thereof pursuant to proceedings under the Note or upon this Mortgage or by virtue of a deed-in-lieu-of-foreclosure, or otherwise, then, and in any such event, all of Mortgagor's right, title and interest in and to all insurance policies referred to herein, including unearned premiums thereon and the proceeds thereof, shall vest in Lender.

## 7.    **Taxes, Assessments and Other Charges.**

7.1    Mortgagor shall pay, prior to the accrual of any interest or penalties, without any deduction, defalcation or abatement, and shall furnish to Lender proper receipts for, within five (5) days after their respective due dates, all ground rents, taxes, assessments, water and sewer rents, licenses or permit fees, and all other charges or claims (collectively, the "Charges") which may be assessed, levied, charged, imposed or filed at any time against Mortgagor, the Mortgaged Property or any part thereof, or against the interest of Lender therein, by any governmental instrumentality or agency or other lawful authority or by any deed restriction, private agreement or declaration, recorded or otherwise, or which by any present or

future law may have priority over the indebtedness secured hereby, either in lien or in distribution out of the proceeds of any judicial sale. Mortgagor will pay, when due, all charges for utilities, whether public or private, used or consumed upon, in or in connection with the Mortgaged Property.

7.2    If requested at any time by Lender, or upon an Event of Default, in addition to the monthly installment of principal and interest due to Lender, Mortgagor shall pay to Lender, on the payment date of said installments of principal and interest, until the Note is fully paid, a sum (the "Escrow Payment") equal to one-twelfth (1/12) of the annual real estate taxes, other municipal assessments and the estimated annual premiums for all insurance required hereunder (the "Escrow Charges"), with an initial deposit to cover the months which will have elapsed between the last date such taxes, charges and premiums were due and payable and the first date on which an installment shall be due hereunder. The Escrow Payments may be commingled with other funds of Lender and no interest thereon shall be due or payable to Mortgagor. Lender shall apply the Escrow Payments to the payment of the Escrow Charges in such order or priority as Lender shall determine. If, at any time, the Escrow Payments theretofore paid to Lender shall be insufficient for the payment of the Escrow Charges, Mortgagor, within ten (10) days after demand, shall pay the amount of the deficiency to Lender. If, at any time, the Escrow Payments exceed the Escrow Charges, Lender shall, in its discretion, return any excess to Mortgagor or credit such excess against future Escrow Payments. Any Escrow Payments shall constitute additional security for the indebtedness secured hereunder.

7.3    After prior written notice to Lender, Mortgagor, at Mortgagor's own expense, may contest, or permit to be contested, by appropriate legal proceeding, promptly initiated and conducted in good faith and with due diligence, the amount or validity or application in whole or in part of any Charges, provided that: (i) there has been no Event of Default under the Note or this Mortgage; (ii) Mortgagor is permitted to do so under the provisions of any mortgage junior in lien to this Mortgage; (iii) such proceeding shall suspend the collection of the Charges from Mortgagor and from the Mortgaged Property; (iv) such proceeding shall be permitted under and be conducted in accordance with the provisions of any other instrument to which Mortgagor is subject and shall not constitute a default thereunder; (v) neither the Mortgaged Property nor any part thereof or interest therein will be in danger of being sold, forfeited, terminated, canceled or lost; (vi) adequate reserves for the payment of the contested Charges, together with all interest and penalties thereon, shall have been set aside, and (vii) Mortgagor shall have furnished to Lender, or caused to be furnished to Lender, such security as may be required in the proceeding, or as may be requested by Lender to insure the payment of any such contested Charges, together with all interest and penalties thereon.

**8.    Sale or Transfer of the Mortgaged Property.** Mortgagor shall not, without the prior written consent of Lender: (i) sell, transfer, convey or assign the Mortgaged Property, or any part thereof, or any interest therein, including, but not limited to, an equitable interest in the Mortgaged Property, or any part thereof, to any party; or (ii) permit the sale, transfer, conveyance or assignment of the Mortgaged Property or any part thereof or any interest therein, either voluntarily or by operation of law.

**9.    Internal Revenue Stamps.** If at any time the United States Government or any department or bureau thereof shall require Internal Revenue stamps on the Note or other indebtedness secured hereby, Mortgagor shall, upon demand made by Lender, pay for such stamps, together with any interest and penalties payable with respect thereto.

**10.    Taxation of Note and Mortgage.**  If any law is hereafter enacted: (i) deducting from the value of real estate, for the purposes of taxation, any lien or encumbrance thereon; (ii) revising or changing in any way the laws and ordinances now in force for the taxation of mortgages or the debts secured thereby, or the manner of collection of such taxes; (iii) imposing a tax directly or indirectly on Lender with respect to the Mortgaged Property, the value of Mortgagor's equity therein, the indebtedness evidenced by the Note and/or secured by this Mortgage; (iv) requiring Lender to pay, in whole or in part, any tax, assessment, charge or lien required to be paid by Mortgagor pursuant to the terms of this Mortgage; then, and in any such event, the entire unpaid balance of the indebtedness secured by this Mortgage shall, at the option of Lender, without notice to Mortgagor, become immediately due and payable, unless, to the extent permitted by such law or ordinance, Mortgagor is authorized to, and does, pay or reimburse Lender for the full amount of any such tax, assessment, charge or lien.

**11.    Compliance with Laws.**

11.1    **Laws**. Mortgagor, at its sole cost and expense, shall promptly comply with all present and future laws, ordinances, orders, rules, regulations and requirements of all federal, state and municipal governments or political subdivisions, courts, departments, commissions, boards, agencies, and officers, and any national or local board of fire underwriters relating in any way to the Mortgaged Property or any portion thereof, and shall promptly comply with all orders and notices of violation of any such laws, ordinances, orders, rules, regulations and requirements. Mortgagor shall promptly pay all license and permit fees and similar municipal charges relating in any way to the Mortgaged Property or any portion thereof or the construction or use of any building and improvement placed or to be placed upon and forming a part of the Mortgaged Property.

11.2    Mortgagor shall immediately notify Lender of Mortgagor's receipt of notice from any agency, instrumentality or body referred to in paragraph 11 hereof relating to the construction, use or occupancy of the Mortgaged Property or any part thereof, or which requires any action to be taken with respect to the Mortgaged Property or any part thereof or which could have an adverse effect on the Mortgaged Property or any part thereof.

**12.    Declaration of No Set-Off.**  Within ten (10) days after being requested to do so by Lender, Mortgagor shall furnish to Lender or to any assignee of the Note and/or this Mortgage, a written statement in form and substance satisfactory to Lender, stating the entire outstanding amount of the indebtedness secured by this Mortgage, and stating either that Mortgagor has no offsets, recoupments, counterclaims or defenses to or against such indebtedness, or, if such offsets, recoupments, counterclaims or defenses are alleged to exist, the nature and extent thereof.

**13.    Additional Financing.**  Mortgagor shall not, without the prior written consent of Lender, undertake any additional financing in connection with the purchase or improvement of the Mortgaged Property or any part thereof, or create or cause or permit to exist any further lien on or security interest in the Mortgaged Property or any part thereof.

**14.    Protection of Mortgage Lien.**  Mortgagor will promptly perform and observe, or cause to be performed and observed, all of the terms, covenants and conditions of all instruments of record affecting the Mortgaged Property, or imposing any duty or obligation upon Mortgagor or any occupant or tenant of the Mortgaged Property or any part thereof. Mortgagor shall do or cause to be done all things necessary to preserve intact and unimpaired any and all easements,

appurtenances and other interests and rights in favor of or constituting any portion of the Mortgaged Property.

15. **Costs, Expenses and Counsel Fees.** Mortgagor shall pay all expenses incurred by Lender incident to the preparation, execution, delivery and/or recording of the Note, this Mortgage and any other Loan Document. Mortgagor shall, upon demand made by Lender, promptly pay to Lender all expenses and costs, including reasonable attorneys' fees, incurred by Lender to collect any of the indebtedness secured hereby or to enforce the performance of the terms, conditions, provisions, agreements and covenants contained herein, in the Note or in any other Loan Document, whether or not suit is instituted, or incurred by Lender in connection with any action, proceeding, litigation or claim instituted or asserted by or against Lender or in which the Lender becomes engaged, wherein it becomes necessary, in the opinion of Lender, to enforce, defend or uphold the lien of this Mortgage or the validity or effectiveness of any assignment of any claim, award, payment, insurance recovery or any other right or property conveyed, encumbered or assigned by Mortgagor to Lender hereunder, or the priority of any of the same or otherwise. All such expenses, costs and attorneys' fees, together with interest thereon at the rate set forth in the Note in the event of a default thereunder, shall be deemed to be part of the principal indebtedness evidenced by the Note and secured by this Mortgage. Further, the exercise by Lender of its rights and remedies and the entry of any judgment by Lender shall not affect in any way the obligation of the Mortgagor to pay any and all costs and legal fees which may become due after the entry of any judgment. Such costs and fees, inclusive of the costs to preserve the Mortgaged Property, shall continue to accrue after the entry of any judgment, whether by confession, default or otherwise, until the Lender is paid in full.

16. **Security Interest in Personal Property.** Mortgagor and Lender hereby acknowledge that this Mortgage constitutes a security agreement under the Uniform Commercial Code, and Mortgagor hereby grants to Lender a security interest in and to every item of Personal Property and the proceeds thereof and profits therefrom, replacements and substitutions therefor and additions and accessions thereto. Mortgagor shall, upon demand made by Lender, execute, deliver and file any financing statements, continuation statements and other instruments, as Lender may from time to time require in order to perfect, confirm and maintain such perfected security interest under the Pennsylvania Uniform Commercial Code. Mortgagor hereby irrevocably appoints Lender, its designees and nominees, as Mortgagor's agents and attorneys-in-fact to execute, deliver and file, on Mortgagor's behalf and in their name, any such financing statements, continuation statements, and other instruments as Lender, in its sole discretion, deems necessary.

16.1 Except as otherwise contemplated by the Loan Agreement, Mortgagor hereby warrants and represents to Lender that Mortgagor is and will be the owner of every item of the Personal Property, free from any leases, conditional sales, chattel mortgages, security interests, liens or encumbrances, other than the security interest hereby created. Mortgagor further hereby represents and warrants to Lender that, unless Lender gives its prior written consent to the contrary, and except as previously disclosed to Lender in writing, every item of the Personal Property has been, and shall be, purchased for cash or in such a manner that no lien shall be created thereon, except the security interest hereby created.

17. **Rents, Profits and Leases.** Mortgagor hereby assigns and transfers unto Lender, its successors and assigns: (i) all rights, title, interest and privileges which Mortgagor has or may have as lessor in any lease now existing or hereafter made and affecting the Mortgaged Property or any part thereof, together with any extensions or renewals of such leases (collectively, the

"Leases" and individually, a "Lease"); and (ii) all rents, income, and profits due or to become due under the Leases, or any of them, or arising or accruing from or relating to the Mortgaged Property, or any portion thereof, or the use thereof, and Mortgagor hereby confers upon Lender, immediately upon Mortgagor's default in any respect under this Mortgage, the Note or any other Loan Documents, the right to enter upon and take possession of the Mortgaged Property, or any portion thereof, and the right, with or without taking possession of the Mortgaged Property, to collect and receive all rents, income and profits accruing from the Leases and from the Mortgaged Property.

17.1    Mortgagor hereby warrants, certifies, covenants and represents to Lender as follows:

17.1.1    That Mortgagor has or will have title to and full right to assign the Leases and the rents, income and profits due and to become due arising from and due pursuant to the Leases and from the Mortgaged Property.

17.1.2    That Mortgagor will not, without the prior written consent of Lender in each instance, enter into any Lease for all or any portion of the Mortgaged Property, (other than the form of Lease approved by Lender,) alter or modify any Lease, consent to any subletting of any Lease, or subordinate any Lease to any mortgage or other encumbrance, other than this Mortgage.

17.1.3    That Mortgagor has not executed, and will not execute, any prior or other assignment of any of its rights under any of the Leases or its rights to the rent, income and profits therefrom or from the Mortgaged Property.

17.1.4    That as of the date of this Mortgage, there is no Lease respecting all or any portion of the Mortgaged Property, other than those set forth on **Exhibit "B"** which is attached hereto and made a part hereof.

17.2    Mortgagor will, immediately upon request by Lender, execute, acknowledge and deliver to Lender a specific separate Assignment of Rents, Profits and Leases with respect to the Mortgaged Property and a specific separate assignment of individual Lease.

**18.    Destruction of the Mortgaged Property.**    In the event of any loss, damage or destruction to or of the Mortgaged Property, or any part thereof, Mortgagor shall give immediate written notice thereof to Lender, and Lender may make proof of loss thereof, if not made promptly by Mortgagor; provided, however, that any adjustment of a proof of loss shall require the prior written consent of Lender. Each insurance company concerned is hereby authorized and directed to make payment under its insurance policies directly to Lender. Lender may, on behalf of Mortgagor, adjust and compromise any claims under any insurance policies. Mortgagor hereby irrevocably constitutes and appoints Lender, its designees and nominees, as Mortgagor's agents and attorneys-in-fact to adjust and compromise claims and to collect and receive proceeds and to endorse drafts therefor. Any proceeds paid to or collected by Lender, after deducting all costs, fees and expenses incurred by Lender in connection with collecting such proceeds, shall be applied, in such order and amounts as Lender, in Lender's sole discretion, may elect, in reduction of the outstanding principal balance of the Note, accrued and unpaid interest thereon, or any other sum due under and/or secured by the Note or this Mortgage, whether or not then due. Lender shall deliver written notice to Mortgagor of the amount so

applied and of the then outstanding balance of the indebtedness secured by this Mortgage, if the insurance proceeds are insufficient to pay the entire amount thereof.

   18.1 **Repair and Restoration**.  Should a casualty loss occur, Lender retains the sole and exclusive right to apply any and all insurance proceeds received against the then outstanding principal balance due under the Note.  Should Lender elect to permit Mortgagor to apply said proceeds to reconstruction of the Real Estate, Lender shall apply the insurance proceeds for the repair and restoration of the Mortgaged Property in accordance with the following conditions:

   18.1.1 Prior to commencement of repair and restoration, all contracts, contractors, and plans and specifications thereof, shall be approved by Lender, and Lender shall be provided with mechanics' lien insurance, an acceptable surety bond insuring satisfactory completion of the repair and restoration, copies of all certificates and permits issued by the governmental or quasi-governmental authorities having jurisdiction over the Real Estate, and evidence of the following insurance: (i) a certificate to the effect that the general contractor performing the repair and restoration (the "General Contractor") has procured insurance policies covering workmen's compensation, contingent liability and public liability, protecting the Mortgagor, the Lender and the General Contractor against any liability for loss or damage to persons or property in any way occurring during the process of the repair and restoration or in any way arising therefrom; (ii) an original policy of builder's all risk insurance with extended coverage (with a standard mortgagee clause in favor of the Lender), in an amount and with a company satisfactory to the Lender, and containing a provision allowing the insured to complete the work provided for hereunder; (iii) such other insurance as Lender may reasonably require, and all of the above policies shall contain the agreement of the insurer to give not less than thirty (30) days' notice to the Lender prior to cancellation of such policies or material change in the coverage thereof, and confirmation that no cancellation or change made in the absence of such notice shall be effective as to the Lender.

   18.1.2 At the time of any disbursement of the proceeds, Mortgagor shall not be in default under the Note or the Mortgage, or any other Loan Documents, no mechanics' or materialmen's liens shall have been filed and remain undischarged and/or not bonded against and a satisfactory bring down of title insurance shall be delivered to Lender.

   18.1.3 Disbursement shall be made from time to time in an amount not exceeding the cost of the work completed since the last disbursement, upon receipt of satisfactory evidence of the stage of completion and of performance of the work in a good and workman-like manner in accordance with the contracts and the plans and specifications.

   18.1.4 Lender shall retain ten percent (10%) of the proceeds until the repair and restoration is fully completed.

   18.1.5 The proceeds shall not bear interest and may be commingled with Lender's other funds.

   18.1.6 Lender may impose such other conditions as are customarily imposed by construction lenders.

   18.1.7 Prior to commencement of and at any time during repair and restoration, if the estimated cost thereof, as determined by Lender, exceeds the amount of the

proceeds, Mortgagor shall, immediately upon demand by Lender, pay the amount of such excess to Lender to be added to the proceeds held by Lender. Any sum so added by Mortgagor which remains upon completion of repair and restoration shall be refunded to Mortgagor. If any sum remains after the completion and any refund to Mortgagor as aforesaid, such sum remaining shall, at Lender's option, be applied in accordance with the provisions of paragraph 18 hereunder.

    **19.**    **Hazardous Substances.** Mortgagor makes the following representations and covenants respecting compliance with environmental laws:

    19.1    The term "Environmental Law," as used in this Mortgage, includes all current and future federal, state, and local environmental laws, statutes, regulations and ordinances, including, but not limited to, Pennsylvania "common law," the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §9601, *et seq.*, as amended ("CERCLA"); the Resource Conservation and Recovery Act, 42 U.S.C. §6901, *et seq.*, as amended ("RCRA"); the Toxic Substances Control Act, 15 U.S.C. §2601, *et seq.*, as amended ("TSCA"); the Clean Air Act, 42 U.S.C. §7401, *et seq.*, as amended; the Pennsylvania Solid Waste Management Act, 35 P.S. §6018.101, *et seq.*, as amended ("WMA"); the Pennsylvania Clean Streams Law, 35 P.S. §691.1, *et seq.*, as amended ("CSL"); and the Pennsylvania Hazardous Sites Cleanup Act, 35 P.S. §6020.101, *et seq.*, as amended ("HSCA").

    The term "hazardous substances," as used in this Mortgage, includes "hazardous substances," "hazardous wastes," "toxic substances," petroleum products, asbestos-containing materials, polychlorinated biphenyls, and any and all other pollutants or contaminants regulated or controlled by any of the Environmental Laws.

    19.2    Mortgagor shall not use, or permit any other party or entity to use, the Mortgaged Property for the purpose of generating, treating, producing, storing, handling, transferring, processing, transporting, disposing or otherwise releasing hazardous substances, either on the Mortgaged Property or elsewhere, which (i) creates or causes a contamination, either on the Mortgaged Property or elsewhere, required by any governmental authority to be remediated under any applicable Environmental Law, (ii) creates any form of liability, however direct or indirect, due to such contamination, or (iii) is in contravention of an Environmental Law.

    19.3    Mortgagor shall, in the event of the discharge, spill, injection, escape, emission, disposal, leak or other release of hazardous substances on, in or from the Mortgaged Property, which is not authorized by a permit or other approval issued by the appropriate governmental agencies, promptly notify the Environmental Protection Agency National Response Center and the Pennsylvania Department of Environmental Protection, and shall take all steps necessary to promptly and thoroughly clean up such discharge, spill, injection, escape, omission, disposal, leak or other release in accordance with the provisions of all applicable Environmental Laws and shall receive a certification from the Pennsylvania Department of Environmental Protection or federal Environmental Protection Agency that the Mortgaged Property has been cleaned up to the satisfaction of those agencies.

    19.4    Mortgagor shall and does hereby grant Lender and Lender's agents, employees, contractors, and designees an irrevocable license (coupled with an interest) to enter the Mortgaged Property from time to time to evaluate and monitor the Mortgaged Property for compliance with all Environmental Laws, as well as the terms of the Mortgage, and to perform

appropriate tests and samplings.  Mortgagor shall provide Lender with all notices and other communications received from federal, state and local agencies and departments which enforce and administer the Environmental Laws.  From time to time Mortgagor shall provide Lender, upon request, with any and all information requested by Lender concerning the use of the Mortgaged Property and Mortgagor's compliance with the Environmental Laws, including, but not limited to, all licenses, permits and certificates, as well as the books and records pertaining to the Mortgaged Property.

19.5    Mortgagor shall require in all leases and subleases that all tenants, subtenants, under-subtenants and other occupants of the Mortgaged Property use and/or occupy the Mortgaged Property in compliance with the Environmental Laws and the terms of the Mortgage.

19.6    Mortgagor shall and hereby does release, indemnify, agree to pay on behalf of and hold harmless Lender, its officers, directors, shareholders, agents, employees, successors and assigns of and from any loss, claim, cost, cause of action, action, demand, damage, fine (civil or criminal), penalty or expense, including clean-up costs, attorney's fees and court costs, which may be incurred, suffered or sustained by reason of any violation or alleged violation of any term of this Mortgage or of any Environmental Laws, caused in whole or in part, regardless of fault, by any past, present or future owner, occupier, tenant, subtenant under-subtenant, licensee, guest, or any other person or entity, including, but not limited to, the Lender. The terms of this subparagraph 19.6 shall survive the payment in full of all sums secured hereby and the satisfaction of record of this Mortgage.

19.7    In the event Lender, in order to protect the priority of this Mortgage, or preserve the value of the Mortgaged Property, or in any situation in which Lender is required, by court order or otherwise, to pay any costs, fees, expenses, settlements, damages, fines (criminal or civil) or penalties, including, but not limited to, clean-up costs, attorney's fees and court costs, because of a past, present or future violation of the Environmental Laws on, in, under, from or about the Mortgaged Property, all such sums shall be added to the amount secured hereby, shall be secured hereby (if this Mortgage is at that time in existence), shall be payable on demand by Mortgagor and shall bear interest at the "Default Rate" set forth in the Note.  The terms of this subparagraph 19.7 shall survive the payment in full of all other sums secured hereby and the satisfaction of record of this Mortgage.

19.8    Mortgagor has investigated the prior ownership and uses of the Mortgaged Property, in a manner consistent with good commercial and customary practice, to determine that the Mortgaged Property is free of hazardous substances.  Mortgagor, in performing its investigation, has considered among other factors, (i) the relationship of the purchase price to the value of the Mortgaged Property, if uncontaminated when acquired, (ii) commonly known or ascertainable information about the Mortgaged Property, and (iii) the obviousness of the presence or likely presence of contamination.

19.9    Mortgagor warrants and represents to Lender that:

19.9.1 None of the real property owned and/or occupied by Mortgagor, including the Mortgaged Property, has ever been used to treat, store, produce, handle, transfer, process, transport, dispose, or otherwise release hazardous substances which has caused, in any manner, a contamination that might or does require remediation under any applicable Environmental Laws or would create any liability therefor;

19.9.2 There is no pollution or danger of pollution or contamination resulting from a condition which exists on the Mortgaged Property which requires any corrective action under the Environmental Laws or which would result in any liability therefor;

19.9.3 No notification has been filed with regard to a release of hazardous substances on, into or from the Mortgaged Property under the Environmental Laws;

19.9.4 Neither Mortgagor nor any prior owner or occupier of the Mortgaged Property, has received a summons, citation, notice of violation, administrative order, directive, letter or other communication, written or oral, from any governmental or quasi-governmental authority concerning any violation or alleged violation of any Environmental Laws;

19.9.5 There are no underground storage tanks located on the Mortgaged Property;

19.9.6 There are no asbestos-containing materials located on the Mortgaged Property; and

19.9.7 There are no polychlorinated biphenyls (PCB's) located on the Mortgaged Property.

19.10  Mortgagor shall immediately remove from the Mortgaged Property, at Mortgagor's sole cost and expense and in compliance with all applicable Environmental Laws, any materials or other items found in, on, under or around the Mortgaged Property which qualify as hazardous substances or are for any other reason deemed environmentally unacceptable by the Lender, in its sole discretion.

19.11  Lender shall be under no obligation or duty to inspect for or discover any hazardous substances on the Mortgaged Property.

19.12  Mortgagor shall and has complied with all requirements of local and state law in connection with the acquisition of the Mortgaged Property.

19.13  Mortgagor shall and does represent and warrant that no lien has been attached to any revenues or any real or personal property owned by Mortgagor and located in the Commonwealth of Pennsylvania, arising from an intentional or unintentional action or omission of Mortgagor or any previous owner and/or operator of the Mortgaged Property, resulting in the releasing, spilling, pumping, pouring, emitting, emptying or dumping of hazardous substances (collectively, "discharges").

19.14  Mortgagor shall and hereby does warrant and represent that it has not received a summons, citation, directive, letter or other communication, written or oral, from the Pennsylvania Department of Environmental Protection or the Environmental Protection Agency concerning any intentional or unintentional action or omission on Mortgagor's part resulting in the discharging of hazardous substances.

19.15  Mortgagor shall furnish the Pennsylvania Department of Environmental Protection and the Environmental Protection Agency with all the information required by the Environmental Laws.

19.16  Mortgagor shall not cause or permit to exist a discharging of a hazardous substance unless said discharge is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal and/or state governmental authorities.

19.17  So long as Mortgagor shall own or operate any real property located in the Commonwealth of Pennsylvania, Mortgagor shall pay or make provision for all payments required by the WMA, CSL, and HSCA.

19.18  In the event that the Pennsylvania Department of Environmental Protection or the Environmental Protection Agency shall file a lien against the Mortgaged Property pursuant to and in accordance with the provisions of the Environmental Laws arising from an intentional or unintentional action or omission or either of Mortgagor, resulting in the discharging of hazardous substances, within sixty (60) days from the date that Mortgagor is given notice that the lien has been placed against the Mortgaged Property or within such shorter period of time in the event that the Commonwealth of Pennsylvania has commenced steps to cause the Mortgaged Property to be sold pursuant to the lien, Mortgagor shall either (i) pay the claim and remove the lien from the Mortgaged Property or (ii) furnish (a) a bond satisfactory to Lender in the amount of the claim out of which the lien arises, (b) a cash deposit in the amount of the claim out of which the lien arises, or (c) other security reasonably satisfactory to Lender in the amount sufficient to discharge the claim out of which the lien arises.

19.19  Mortgagor shall, in the event Mortgagor causes or permits any intentional or unintentional action or omission resulting in the discharging of hazardous substances, without having obtained a permit issued by the appropriate governmental authorities, promptly clean up the same in accordance with the provisions of the WMA, CSL, and HSCA.

**20.    Financial Statements.**  Mortgagor shall deliver, in accordance with the Loan Agreement and at other times upon reasonable request, Mortgagor's current financial statements and such additional information as Lender may require.

**21.    Eminent Domain.**  In the event that the Mortgaged Property, or any part thereof, shall be taken in condemnation proceedings or by the exercise of any right of eminent domain or bona fide sale in lieu thereof (hereinafter collectively referred to as "Condemnation Proceedings"), Mortgagor and Lender shall have the right to participate in any such Condemnation Proceedings.  The award that may be made in any such Condemnation Proceedings and the proceeds thereof or the agreed upon compensation for damages sustained shall be applied by Lender, in such order and amounts as Lender, in its sole discretion, may elect, in reduction of the outstanding principal balance of the Note, all accrued and unpaid interest thereon, or any other sum due under and/or secured by the Note or this Mortgage, whether or not then due.

21.1  Repair and Restoration.  Notwithstanding the provisions of paragraph 21, so long as Mortgagor is not and has never been in default, and there is not and has never been any delinquencies hereunder or under the Note, Lender shall apply the condemnation proceeds for the repair and restoration of the Mortgaged Property in accordance with the following conditions:

21.1.1  Prior to commencement of repair and restoration, all governmental and quasi-governmental permits and approvals, the contracts, contractors, and plans and specifications thereof shall be approved by Lender, and Lender shall be provided with

mechanics' lien insurance and an acceptable surety bond or guarantee insuring satisfactory completion of the repair and restoration.

21.1.2 At the time of any disbursement of the proceeds, Mortgagor shall not be in default under the Note or the Mortgage, no mechanics' or materialmen's liens shall have been filed and remain undischarged and or properly bonded against and a satisfactory bring down of title insurance shall be delivered to Lender.

21.1.3 Disbursement shall be made from time to time in an amount not exceeding the cost of the work completed since the last disbursement, upon receipt of satisfactory evidence of the stage of completion and of performance of the work in a good and workman-like manner in accordance with the contracts and the plans and specifications.

21.1.4 Lender shall retain ten percent (10%) of the proceeds until the repair and restoration is fully completed.

21.1.5 The proceeds shall not bear interest and may be commingled with Lender's other funds.

21.1.6 Lender may impose such other conditions as are customarily imposed by construction lenders.

21.1.7 Prior to commencement of and at any time during repair and restoration, if the estimated cost thereof, as determined by Lender, exceeds the amount of the proceeds, Mortgagor shall, immediately upon demand by Lender, pay the amount of such excess to Lender to be added to the proceeds held by Lender.  Any sum so added by Mortgagor, which remains upon completion of repair and restoration, shall be refunded to Mortgagor.  If any sum remains after the completion and any refund to Mortgagor as aforesaid, such sum remaining shall, at Lender's option, be applied in accordance with the provisions of paragraph 21 hereunder.

22.    **Events of Default.**  The occurrence of any one or more of the following shall constitute an "Event of Default" hereunder:

22.1    The failure of Mortgagor to pay, after the expiration of any applicable notice and grace periods, any payment of interest, principal or both or any other sum due under and/or secured by this Mortgage, the Note, or any other Loan Documents.

22.2    The failure of Mortgagor to perform or comply with any other of the terms, conditions, provisions, agreements, covenants and conditions contained herein or in the Note or in any other Loan Document within ten (10) days after notice from Lender, unless a greater period of time to cure such default is provided for in the Loan Documents.

22.3    The occurrence of a default or an Event of Default, after the expiration of any applicable grace and notice periods, under this Mortgage, the Note or under any other Loan Documents.

22.4    The filing, by or against Mortgagor of a petition in Bankruptcy, for liquidation, reorganization, arrangement or adjustment or similar remedy under any of the provisions of the Federal Bankruptcy Code, or any amendment or revision thereof, or similar statute applicable to Mortgagor, or any filing for similar relief under the provisions of any other

federal or state insolvency law which, if filed against Mortgagor, is consented to by Mortgagor or remains undismissed for thirty (30) days.

      22.5    The making by Mortgagor of an assignment for the benefit of its creditors.

      22.6    The appointment of a receiver for Mortgagor or for any of the property or assets of Mortgagor, including, but not limited to, the Mortgaged Property or any part thereof.

      22.7    The issuance of any writ or process of execution or attachment against Mortgagor or any property or assets of Mortgagor, including, but not limited to, the Mortgaged Property or any part thereof, or the levy or service of any such writ.

      22.8    The occurrence of a default or Event of Default by Mortgagor under any other loan made to Mortgagor by Lender, whether now existing or entered into at a later date.

      22.9    The default by Mortgagor in making any payment for money owed or borrowed by Mortgagor.

      22.10  The filing of any mechanic's or materialmen's lien or municipal claim against all or any portion of the Mortgaged Property which is not discharged within ten (10) days.

      22.11  The entry or filing of any judgment, lien, encumbrance, notice of lien, attachment, levy or any other adverse charge against the Mortgaged Property or any portion thereof which is not discharged within ten (10) days.

      22.12  The existence of any security interest in favor of any party other than Lender in any of the Personal Property, or the purchase of any item of the Personal Property on a lease, retained title or installment sale basis.

      22.13  If any representation or warranty made to Lender, or any financial statement given to Lender, in or in connection with the Note, the Loan Agreement, or this Mortgage shall appear to be false or incorrect in any respect regarded by Lender as material.

      22.14  Mortgagor delivering or causing to be delivered to Lender a notice pursuant to 42 Pa. C.S.A. §8143, *et. seq.*, as amended, electing to limit the indebtedness secured by this Mortgage.

    **23.**   **Remedies.**  Upon the occurrence of any Event of Default, the entire unpaid balance of principal, and all accrued and unpaid interest under the Note, and all other sums due under or secured by this Mortgage shall, at the option of Lender, become immediately due and payable, without notice or demand.  Lender may forthwith, and without delay:

      23.1    Institute an action of mortgage foreclosure against the Mortgaged Property, or any portion thereof, or take such other action at law or in equity for the enforcement of this Mortgage and realization on the mortgage security or any other security herein or elsewhere provided for, and proceed therein to final judgment and execution thereon for the entire accelerated indebtedness as aforesaid, together with all costs of suit and attorneys' fees, together with interest at the rate set forth in the Note, on any judgment obtained by Lender from and after the date of any Sheriff's Sale of the Mortgaged Property until actual payment is made by the Sheriff of the full amount due to Lender.

23.1.1 The Mortgaged Property, or any portion thereof, may be sold pursuant to any Writ of Execution issued on a judgment obtained by virtue of the Note or this Mortgage or pursuant to any other judicial proceedings, whether or not under this Mortgage, in one parcel as an entirety, or in such parcels, manner and order as Lender, in its sole discretion, may elect.

23.2    Enter and take possession of the Mortgaged Property and manage and operate the same, let or re-let the Mortgaged Property or any part thereof, cancel, modify and grant indulgences with respect to the Leases, evict tenants, bring or defend any suits in Lender's name or in Mortgagor's name in connection with possession of the Mortgaged Property, make repairs, alterations and improvements, as Lender deems appropriate, and perform such other acts in connection with the management and operation of the Mortgaged Property as Lender, in its sole discretion, deems appropriate, and demand, sue for, collect and receive all or any rents, income and profits accruing from the Mortgaged Property and from the Leases.  Any income so derived from the Mortgaged Property and from the Leases shall be applied by Lender, in such order and amounts as Lender shall elect, to the costs of operation and maintenance of the Mortgaged Property, the expenses (including attorney's fees) incident to taking and retaining possession of the Mortgaged Property and collecting the rents, issues and profits therefrom and from any Lease, any other expenses, as Lender shall determine, and monies necessary to satisfy all indebtedness due under and/or secured by the Note and this Mortgage.

**23.2.1 THE FOLLOWING SECTION SETS FORTH WARRANTS OF ATTORNEY FOR ANY ATTORNEY TO CONFESS JUDGMENTS AGAINST MORTGAGOR.  IN GRANTING THESE WARRANTS OF ATTORNEY TO CONFESS JUDGMENTS AGAINST MORTGAGOR, MORTGAGOR HEREBY KNOWINGLY, INTENTIONALLY, VOLUNTARILY, AND UNCONDITIONALLY WAIVES ANY AND ALL RIGHTS MORTGAGOR MAY HAVE TO PRIOR NOTICE AND AN OPPORTUNITY FOR HEARING UNDER THE RESPECTIVE CONSTITUTIONS AND LAWS OF THE COMMONWEALTH OF PENNSYLVANIA AND THE UNITED STATES OF AMERICA.**

**FOR THE PURPOSE OF OBTAINING POSSESSION OF THE MORTGAGED PROPERTY UPON THE OCCURRENCE OF AN EVENT OF DEFAULT, MORTGAGOR HEREBY AUTHORIZES AND EMPOWERS ANY ATTORNEY OF ANY COURT OF RECORD OF THE COMMONWEALTH OF PENNSYLVANIA OR ELSEWHERE, AS ATTORNEY FOR MORTGAGOR AND ALL PERSONS CLAIMING UNDER OR THROUGH MORTGAGOR, TO BY COMPLAINT OR OTHERWISE, TO APPEAR FOR AND ENTER AND CONFESS JUDGMENT IN FAVOR OF LENDER AND AGAINST MORTGAGOR, AND AGAINST ALL PERSONS CLAIMING UNDER OR THROUGH MORTGAGOR, FOR RECOVERY BY LENDER OF POSSESSION OF THE MORTGAGED PROPERTY, FOR WHICH THIS MORTGAGE, OR A COPY HEREOF VERIFIED BY AFFIDAVIT, SHALL BE A SUFFICIENT WARRANT; WHEREUPON, IF LENDER SO DESIRES, A WRIT OF POSSESSION MAY IMMEDIATELY ISSUE FOR POSSESSION OF THE MORTGAGED PROPERTY, WITHOUT ANY WRIT OR PROCEEDING WHATSOEVER AND WITHOUT ANY STAY OF EXECUTION.  IF FOR ANY REASON AFTER SUCH ACTION HAS BEEN COMMENCED IT SHALL BE DISCONTINUED, OR POSSESSION OF THE MORTGAGED PROPERTY SHALL REMAIN IN OR BE RESTORED TO MORTGAGOR, LENDER SHALL HAVE THE RIGHT IN CONNECTION WITH THE**

SAME DEFAULT OR ANY SUBSEQUENT DEFAULT TO BRING ONE OR MORE FURTHER ACTIONS OR ENTER AND CONFESS JUDGMENT ONE OR MORE TIMES AS HEREIN PROVIDED TO RECOVER POSSESSION OF THE MORTGAGED PROPERTY. LENDER MAY BRING AN ACTION IN EJECTMENT AND CONFESS JUDGMENT THEREIN BEFORE OR AFTER THE INSTITUTION OF PROCEEDINGS TO FORECLOSE THIS MORTGAGE OR TO ENFORCE THE NOTE, OR AFTER ENTRY OF JUDGMENT IN ANY PROCEEDINGS TO FORECLOSE THIS MORTGAGE OR ON THE NOTE, OR AFTER A SHERIFF'S SALE OF THE MORTGAGED PROPERTY IN WHICH LENDER IS THE SUCCESSFUL BIDDER.

MORTGAGOR ACKNOWLEDGES THAT MORTGAGOR HAS HAD THE ASSISTANCE OF LEGAL COUNSEL IN THE REVIEW AND EXECUTION OF THIS MORTGAGE AND FURTHER ACKNOWLEDGES THAT THE MEANING AND EFFECT OF THE FOREGOING PROVISIONS CONCERNING CONFESSION OF JUDGMENT HAVE BEEN FULLY EXPLAINED TO MORTGAGOR BY SUCH COUNSEL.

MORTGAGOR ACKNOWLEDGES AND AGREES THAT (A) THE FOREGOING WARRANT OF ATTORNEY TO CONFESS JUDGMENT IS BEING EXECUTED IN CONNECTION WITH A COMMERCIAL TRANSACTION, (B) LENDER'S CONFESSION OF JUDGMENT FOLLOWING AN EVENT OF DEFAULT AND IN ACCORDANCE WITH THE FOREGOING WARRANT OF ATTORNEY WOULD BE IN ACCORDANCE WITH MORTGAGOR'S REASONABLE EXPECTATIONS, AND (C) LENDER DOES NOT AND, IN REGARD TO THE LOAN OR THE LOAN DOCUMENTS, SHALL NOT HAVE ANY OF THE DUTIES TO MORTGAGOR SET FORTH IN 20 PA.C.S.A. §5601.3(B).

23.3    Have a receiver appointed to enter into possession of the Mortgaged Property and to collect the rents, issues, profits and income therefrom and to apply such rents, issues, profits and income as provided for in subparagraph 23.2 hereof or as the court may otherwise direct. Lender shall be entitled to the appointment of a receiver without the necessity of proving either the inadequacy of the security for the indebtedness secured hereby or the insolvency of Mortgagor or any other person who may be legally or equitably liable to pay money secured hereby, and Mortgagor and each such other person shall be deemed to have waived such proof and to have consented to the appointment of such receiver.  Should the Lender or any receiver collect rents, issues, profits or income from the Mortgaged Property, monies so collected shall not be substituted for the payment of the indebtedness secured hereby, nor can they be used to cure the default, without the prior written consent of Lender.  Any receiver shall be liable to account only for the rents, issues, profits and income actually received by such receiver.

23.4    Exercise all of the remedies of a secured party under the Uniform Commercial Code, including, but not limited to, the right and power to sell, or otherwise dispose of, the Personal Property or any part thereof, and for that purpose Lender shall take immediate and exclusive possession of the Personal Property or any part thereof as Lender elects and, with or without judicial process, enter upon any portion of the Mortgaged Property on which the Personal Property, or any part thereof, may be situated and remove the same without being guilty of trespass and without liability for damages thereby occasioned.

23.5    Exercise the rights set forth in paragraph 28 hereof.

23.6    Exercise any other right or remedy otherwise available to Lender and resort to any other security held by Lender for the payment of the indebtedness secured hereby in such order and manner as Lender, in its sole discretion, may elect.

**24.    Remedies Cumulative.** The rights and remedies of Lender provided for in this Mortgage, in the Note and in any other Loan Document shall be cumulative and concurrent and shall not be exclusive of any right or remedy provided by law, in equity or otherwise. Said rights and remedies may, at the sole and exclusive discretion of Lender, be pursued singly, successively or together, and may be exercised as often as occasion therefor shall arise.

**25.    Default Rate of Interest.** Upon the occurrence of any Event of Default, Mortgagor shall pay interest at the Default Rate (as defined in the Note). The Default Rate shall be computed from the occurrence of the Event of Default until the date the Event of Default is cured. This charge shall be added to the indebtedness hereunder and shall be deemed secured by this Mortgage. Nothing contained herein shall be construed as an agreement or privilege to extend the date of the payments under the Note nor as a waiver of any other right or remedy accruing to mortgagee by reason of the occurrence of an Event of Default. If the Default Rate is above the maximum rate permitted by applicable law, the Default Rate shall be the maximum rate permitted by applicable law.

**26.    Mortgagor's Waivers.** Mortgagor hereby waives and releases: (i) all errors, defects and imperfections in any proceeding instituted by Lender under this Mortgage, the Note or any other Loan Document; (ii) all notices of default or of Lender's exercise, or election to exercise, any right or remedy referred to in paragraph 24 hereof; and (iii) the benefit of any laws now or hereafter enacted extending the time for payment of any sum due under or secured hereby or affording any right to a stay of any execution to be issued on any judgment obtained under the Note, this Mortgage or any other Loan Documents or exempting any property from levy and sale upon any such execution.

**27.    No Waiver.** No failure or delay by Lender in insisting upon the strict performance by Mortgagor of any of the terms, covenants, conditions, agreements and provisions contained herein, in the Note or in any other Loan Documents shall constitute or operate as an estoppel or a waiver of any such terms, covenants, conditions, agreements and provisions, nor shall any such failure or delay preclude Mortgagee from thereafter insisting upon such strict performance by Mortgagor. Neither Mortgagor, nor any guarantor or surety or other person obligated for the payment of the indebtedness secured hereby, shall be relieved of such obligation by reason of the failure of Lender to comply with any request of Mortgagor, or of any such guarantor, surety or other person, to take action to foreclose this Mortgage or any of the obligations secured by this Mortgage, or by reason of the release, regardless of consideration, of the whole or any part of the security held for the indebtedness secured by this Mortgage, or by reason of any agreement or stipulation between any subsequent owner or owners of the Mortgaged Property and Lender extending the time of payment or modifying the terms of the Note or this Mortgage without first having obtained the consent of Mortgagor or any such guarantor, surety or other person, and Mortgagor and each such guarantor, surety and other person shall continue to be liable to make payments according to the terms of any such extension or modification agreement, unless expressly released and discharged in writing by Lender. Lender may release, regardless of consideration, the obligation of any party at any time liable for any of the indebtedness secured by this Mortgage or any part of the security held for the indebtedness secured by this Mortgage without, as to any other person so obligated or the

remainder of such security, in any way affecting such other person's obligation or impairing or affecting the lien of this Mortgage or the priority of the lien of this Mortgage.

**28.   Lender's Right to Remedy Defaults.**   If Mortgagor fails to pay when due any sum required to be paid by Mortgagor or fails to perform any obligation of Mortgagor hereunder, Lender, at its option, shall have the right, but not the obligation, to pay any such sum and to perform any such obligation, and Lender shall have the right, but not the obligation, to pay any sum or take any action which Lender deems necessary or advisable to protect the security of this Mortgage or the Mortgaged Property, all without prejudice to any of Lender's rights or remedies available hereunder or under the Note or under any other Loan Documents, at law, or in equity. The amount of all payments so made by Lender, together with all costs so incurred by Lender, shall immediately be due and payable from Mortgagor to Lender, together with all costs so incurred by Lender, together with interest at the rate set forth in the Note, in the discretion of Lender, in the event of a default hereunder, from the date such payment was made or cost incurred by Lender until the date of repayment by Mortgagor.  All such amounts, together with interest as aforesaid, shall be added to and evidenced by the Note and secured by this Mortgage.

**29.   Further Assurances.**   Mortgagor will execute and deliver such further instruments and documents, and perform such further acts as may be requested by Lender from time to time to confirm the provisions of, or to carry out more effectively the purposes of this Mortgage, the Note or any other Loan Documents securing the Note.  Mortgagor hereby authorizes Lender to execute and deliver such further instruments and documents and to perform such further acts at any time and from time to time, on behalf of Mortgagor.  Mortgagor hereby irrevocably appoints Lender, its designees and nominees, as Mortgagor's agents and attorneys-in-fact, to execute, from time to time, on behalf of Mortgagor, one or more such instruments and documents.

**30.   Open-End Mortgage.**   This Mortgage is an Open-End Mortgage, securing all of Mortgagor's obligations to Lender, including future advances, up to a maximum amount of indebtedness of One Hundred Sixty Thousand Dollars, plus accrued and unpaid interest, maintenance charges, insurance premiums, or costs incurred for the protection of the lien of this Mortgage, expense incurred by Lender by reason of a default hereunder or under the Note or the other Loan Documents, together with all other sums due or secured under or by this Mortgage.

**31.   Notices and Other Communications.**   All notices and other communications required or given under or with respect to this Mortgage shall be in writing, and shall be sent by registered or certified mail, postage prepaid, addressed to Mortgagor or to Lender at their respective addresses set forth in the heading of this Mortgage, or at such other address as the addressee may designate in writing from time to time.

**32.   Captions.**   The heading and captions herein are inserted for convenience of reference only and shall not control or affect the meaning or construction of any of the provisions of this Mortgage.

**33.   Binding Effect.**   This Mortgage shall bind Mortgagor and its successor and assigns and shall inure to the benefit of Lender and Mortgagor and their respective successors and assigns.

**34.   No Amendment.**   This Mortgage shall not be modified or amended, except in writing signed by the party against whom the enforcement of such amendment or modification is sought.

**35.   Severability.**   If any term, covenant or condition of this Mortgage or the application thereof to any party or circumstance shall, to any extent, be invalid, or unenforceable, the remainder of this Mortgage, or the application of such term, covenant or condition to parties or circumstances, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term, covenant or condition of this Mortgage shall be valid and be enforced to the fullest extent permitted by law.

**36.   Governing Law.**   This Mortgage shall be construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania.

**37.   Lender's Powers.**   Mortgagor acknowledges and agrees that (a) any powers granted to Lender hereunder are granted in connection with a commercial transaction, (b) Lender's exercise of any such powers would be in accordance with Mortgagor's reasonable expectations, and (c) Lender does not and shall not have any of the duties to Mortgagor set forth in 20 Pa.C.S.A. §5601.3(b), and the same are hereby irrevocably waived by Mortgagor.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK – SIGNATURE PAGE FOLLOWS]**

**IN WITNESS WHEREOF,** Mortgagor has caused this Mortgage to be duly executed the day and year first above written.

**MORTGAGOR:**

_____          _____(SEAL)
Witness                                            **ASHRAFUL ISLAM**

_____          _____ (SEAL)
Witness                                            **DILRUBA ISLAM**


The address of the within named Lender is:

455 Pennsylvania Avenue, Suite 2LF,
Fort Washington, PA 19034

_____
On behalf of Lender

# ACKNOWLEDGMENTS

COMMONWEALTH OF PENNSYLVANIA :
                : SS

COUNTY OF MONTGOMERY    :

  On this, the 19th day of September, 2017, before me, the undersigned officer, personally appeared **ASHRAFUL ISLAM and DILRUBA ISLAM**, known to be or satisfactorily proven to be the persons whose names are subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained.

  IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_____
    Notary Public

COMMONWEALTH OF PENNSYLVANIA

Notarial Seal
Michael Jay Higgins, Notary Public
Horsham Twp., Montgomery County
My Commission Expires Oct. 9, 2017

## Description and Recital

ALL THAT CERTAIN lot or piece of land with the buildings and improvements thereon erected, Situate in the Borough of Lansdale, County of Montgomery and Commonwealth of Pennsylvania, bounded and described as follows:

BEGINNING at an iron pin on the Northeasterly side of Main Street (fifty-six feet wide) at the distance of fifty-seven feet Northwestwardly from the Northwest side of Wood Street; extending thence along the said Northeast side of Main Street, Northeastwardly forty-three feet to land now or formerly of Samuel L. Swartley; thence along said land of now or formerly Samuel K. Swartley, Northeastwardly one hundred seventy-two feet to the Southwest side of Second Street, known as Mill Alley ; thence along said Southwest side of Second Street; Southeastwardly forty-three feet to a stake a corer of land now or late of Cynthia Brady; thence by said land now or late of Cynthia Brady; Southwestwardly one hundred seventy-two feet to the said Northeast side of Main Street, the first above mentioned point and place of beginning.

BEING 409 W. Main Street.

Tax ID / Parcel No.  11-00-09548-00-8

Being the same premises which Dilip Patel and Naishadh, co-partners by Deed dated 5-2-1996 and recorded 5-10-1996 in Montgomery County in Deed Book 5147 Page 1440 conveyed unto Ashraful Islam and Dilruba Islam, husband and wife, in fee.

EXHIBIT "A"